Chas. R. King v. Walter Gwynn.

CHARLES R. KING, TAX ASSESSOR AND COLLECTOR, &c., vs. WALTER GWYNN, AGENT, &c.

1. A mere agent of the owner of land cannot maintain in his own name a suit to enjoin the collection of taxes alleged to be illegally imposed upon the land.

2. A bill in equity will not be sustained which seeks to enjoin the collection of a tax on the ground of mere irregularity in the assessment, or. the excessiveness of the tax.

3. In the absence of an express provision of the statute as to the mode of ascertaining the valuation of property for purposes of taxation in 1869 : *Held*, that it was competent for the Assessor to ascertain and assess the value by the exercise of his own judgment, and a *valuation* made by the tax-payer did not control.

This is a bill in equity brought by Walter Gwynn, Agent for the Trustees of the P. and G. Railroad Company, against the appellant, tax-collector of the county of Columbia, alleging that complainant represents 17,516½ acres of land in said county belonging to said Trustees. That said lands are not of a greater value than $4,379 12-100. That he returned said lands for taxation as the law directs at that sum for the year 1869. That all the taxes due on said land for said year amounts to $48.16, but that the defendant demands $192.68, as taxes on said land for said year; that the last mentioned sum is not assessed according to law, but in direct violation

Chas. R. King v. Walter Gwynn.

thereof, as he is prepared to show by proper proofs. That defendant threatens to advertise and sell said lands for the payment of this unjust and illegal demand; and complainant prays an injunction to restrain the defendant from proceeding to advertise or sell said lands.

Upon the filing of the bill, a writ of injunction was granted by the Circuit Judge, without notice to defendant and without giving bond.

The defendant by his counsel moved the court to dissolve the injunction, and this motion was denied, whereupon an appeal was taken.

The appellant assigns the following grounds for reversal of the order:

1. That the injunction was granted without notice.
2. That it was granted without bond.
3. That the plaintiff's remedy is at common law.

*Charles R. King* for Appellant.

*David S. Walker* for Appellee.

RANDALL, C. J., delivered the opinion of the court.

The complainant represents himself as the agent of the owners of real estate upon which it is alleged a tax has been illegally assessed for the year 1869. He does not show or pretend that he has any interest whatever in the land, or in the subject-matter in controversy. We are not referred to any rule of law or equity which authorizes a mere agent, having only the care and oversight of real estate, to maintain an action in his own name relating to such property. If taxes have been improperly assessed upon such lands, the owner or some person having an interest therein may have such remedy as the law affords. The injury threatened in this case affects the owner or his creditors, not the agent. For aught that appears, the principal may have assented to the levy of the tax complained of by the agent, but the names

of the parties affected are not mentioned in the bill of complaint.

The person having the legal title must be a party to the suit. If the want of proper or necessary parties is apparent on the face of the bill, the defect may be taken advantage of by demurrer. If the court shall proceed to a decree, the decree may be reversed for error on this account. Story's Eq. Pl., pp. 231 to 236; Cooper's Eq. Pl., 33; 1 Daniel's Ch'y Pr. 180 (3d ed.); Betton vs. Williams, 4 Fla. 11.

It may be appropriate to say nothing further in the present disposition of this cause, but as there seemed to be some difference between counsel in relation to the state of the law regulating the assessment of property for the purposes of taxation, in force at the time of the levy of the taxes for the year 1869, it is not deemed out of place to notice the argument on that point.

Respondent's counsel insists that the assessment and valuation of the lands could not be made under the act of January 15, 1859, Chap. 589, because that act was repealed by Chap. 1345, approved Dec. 8, 1862. This latter act provides that " the County Commissioners of the several counties of this State shall value all property subject to taxation in their respective counties, and assess the taxes thereon as required by law to be done by Tax-Assessors and Collectors," add repeals " all laws and parts of laws conflicting with the provisions of this act."

Upon the passage of this act there was left no mode of assessing the value of property except according to its provisions, and we find that this act was also repealed by Chap. 1,405, approved Dec. 2, 1863, without reviving any pre-existing law or providing any new method of assessment of *valuations*, but it directs the Assessors to assess taxes upon all taxable property thereafter. We next find an act approved January 16, 1866, Chap. 1,501, entitled an act to raise a revenue for the State of Florida. The first section imposes a capitation tax. The second section enumerates

the various kinds of property, real and personal, subject to taxation, and provides that they shall be taxed at an uniform rate upon the value thereof. The third section provides "that the value of assessments on the subjects of taxation and specified in the second section of this act, shall be made in *the manner prescribed by law* for the valuation of property and the assessment of taxes thereon; and the taxes authorized to be levied for county, city and town purposes, shall be assessed and collected in conformity with the principles of equality and uniformity, as prescribed in the State Constitution." The fourth section provides that the subjects of taxation shall be taxed at the rate of one-half of one per centum of the value, and no other State tax.

We have seen that the act of Dec. 8, 1862, providing that County Commissioners should fix the valuation of property to be taxed, repealed all laws conflicting therewith. Then the act of Dec. 2, 1863, repealed that of 1862, without reviving any other law; and we find a law on page 22 of Thomp. Dig., declaring that the repeal of a repealing act does not revive the act first repealed, unless there be express words declaring that purpose. The result is that at the time of the enactment of the act of January 16, 1866, there was no express law in existence prescribing the manner of estimating the value of taxable property.

The respondent insists, however, that the 8th section of the last named law provides a mode of valuation. It reads as follows: "That all *returns of taxable property* shall be sworn to before the Tax-Assessor, or any other officer authorized to administer oaths, or some evidence by the tax-payer making the same, and the Assessor shall certify under oath, upon his assessment book, that this requisition has been complied with in every instance." I do not think this section, either expressly, or by implication, gives a rule for estimating the taxable value of property. It merely provides that the "return of taxable property," in other words, the list of property taxable according to the second section, shall

be sworn to by the person making the list or return.    It says nothing about valuation.

There are papers in the record relating to the appointment of a committee of three persons by the County Commissioners for the purpose of revising some of the assessments, according to the provisions of the repealed act of 1859, but we discover no connection between these papers and the case at bar.    It may be that this proceeding led to the alleged increased assessment of the property referred to in the complainant's bill, for we find that the Tax Assessor complains to the Commissioner that while some of the lands are given in at five dollars per acre, other lands equally valuable are given in at fifty cents per acre; and we find also that the committee reported that lands of the Trustees of the Pensacola and Georgia Railroad were raised from twenty-five cents to one dollar in valuation.

What action was taken upon this report does not appear, nor does it appear that the lands of the Trustees were valued according to this report in the tax rolls as a basis for the levying of the tax complained of.

If I am correct in the conclusion that the laws specially providing for the valuation of property had been repealed, it may be legitimately implied that the proper officer—to-wit: the Assessor—should ascertain, according to the best means within his reach, the value of property returned for taxation, in order that he may assess and collect the taxes "in conformity with the principles of equality and uniformity as prescribed in the State Constitution," and I do not see how the principles of equality and uniformity could well be observed in the valuation and taxation of property, if each owner of property were allowed to put such value upon it as he saw fit, without reference to the value of his neighbor's property, and perhaps with an eye to avoiding the bearing of his due share of the burthens of government.

The act of 1866 does not authorize the tax-payer to assess the value of his own property, but it does require the As-

sessor to apportion the taxes with reference to "equality and uniformity," and he can do this only by making an estimate of the value of property taxed, and apportioning the taxes accordingly. If the Assessor, in this case, distrusting his own judgment, chose to consult that of the County Commissioners, or a committee of citizens, it should seem to show that he endeavored to do his duty honestly and conscientiously. But in what manner he arrived at the value of the property in question does not appear. That he differed with the Agent of the Trustees of the lands of the Pensacola and Georgia Railroad in his estimate of the value of the lands, with reference to the equality and uniformity of the valuation of the property of others, is not a ground for appealing to a court of equity.

But the bill in this case does not set forth in what particular the Assessor proceeded illegally, and it cannot therefore be determined from the bill that a writ of injunction ought to have been granted.

It is held in Pennsylvania and other States that equity will not interfere if the statute has provided a remedy. Hughes vs. Kline, 30 Penn., 227. If one is excessively taxed and omit the course provided by law for his relief, the Court will not enjoin the collection for the purpose of enabling him to bring an action to settle the legality of the tax. Deane vs. Todd, 22 Miss., 90.

The 4th Section of Chapter 151, Laws of 1847-8, provides an ample and convenient remedy by petition to the Circuit Judge, who will examine the matter and decide upon the lawfulness of the assessment. The Supreme Court of Illinois, in Ottawa vs. Walker, 21 Ill., 610, makes the following distinction as to the cases in which the court of equity may or may not interfere by injunction : "Where a corporation, or an officer, or a body of individuals, are vested with the power to levy a tax for a specific purpose, a court of equity will not enquire into the regularity of the exercise of the power, but leave the parties to their remedy

at law, unless it is exercised for fraudulent purposes. But when the law has conferred no power to levy a tax, or in case a person or an officer not authorized to exercise such a power shall levy a tax, or when the proper persons shall make the levy for purposes on the face of the levy not authorized, or for fraudulent purposes, a court of equity may stay its collection by injunction." A court of equity will not restrain the collection of a tax where the assessment is merely erroneous and not void. Livingston vs. Hollenbeck, 4 Barbour, 9 ; Van Rensselaer vs. Kidd, ib., 19.

It does not follow that every person whose taxes are rated higher than they should be, or who may be injured by the errors of ministerial or judicial officers in the attempt to perform official duties, may have a remedy by bill in chancery. The jurisdiction of chancery arises from necessity ; from the effort and the desire to avoid complex litigation, and from the provisions of legislative enactments conferring jurisdiction ; and though a remedy at law may be provided for cases where equitable jurisdiction before obtained without destroying the latter, I do not see that this doctrine affects the case at bar, unless the enactment of a statutory remedy, which did not before exist, is, of itself, a recognition of the prior existence of a remedy in equity. This, of course, will not be pretended.

The injunction must be dissolved and this cause remanded, with directions to dismiss the bill.