WILLIAM SHEAR, APPELLANT, VS. COUNTY COMMISSIONERS
OF COLUMBIA COUNTY.

1. Where, in a statute *changing and regulating the method* of assessment of taxes, there is a general repeal of all laws relating to assessment, it does not repeal a law prescribing *a remedy* for an illegal assessment. Section 4 of Chapter 151 of the Laws of Florida is not repealed by Section 79 of Chapter 1713 of the Laws of Florida.

2. A statute giving a remedy for an "*illegal* assessment" embraces those assessments only in which there is error in matters of law. The judgment of the County Commissioners upon a complaint for the abatement of a tax is a judicial act, in which the exercise of their discretion in fixing values cannot be revised by any other tribunal.

This is an appeal from the Third Judicial Circuit, Columbia county.

This is a petition to the Circuit Court setting forth an application to the County Commissioners of Columbia county "to meet and consider the assessment" for the purpose of State taxation made against the lands of the petitioner with a view to its reduction. The petitioner alleges that such meeting was held, and the commissioners, after hearing all the facts, with proof of the value, determined to reduce the assessment; that subsequently this action was set aside. The petition sets up facts showing an over estimate in the value, and prays an order declaring the assessment "not lawfully made."

The 4th Section of Chapter 151 of the Laws of Florida provides "that in all cases where assessments are made against any person or persons, body politic or corporate, and payment of the same may or shall be refused upon allegation of the illegality of such assessment, such person or persons, body politic or corporate, may apply to the Judge of the Circuit Court by petition, setting forth the alleged illegality, and present the same, together with the evidence to sustain it, and the judge shall decide upon the same, and if found to be illegal, shall declare the assessment not lawfully made."

The 79th Section of Chapter 1713 of the Laws of Florida, which is "An act for the assessment and collection of revenue," provides that "all acts and parts of acts heretofore passed relating to assessment and taxation, are hereby repealed.

The first question presented by the case and considered by the court is, does the 79th Section of Chapter 1713 repeal the 4th Section of Chapter 151? The next question considered is as to the power of the Circuit Court to set aside the action of the commissioners in the matter of the over valuation of the land of the petitioner. The court deems it unnecessary, in view of the conclusions reached, to express any opinion as to the effect of the enactment of the Code upon the remedy given by the 4th Section of Chapter 151, Laws of Florida.

*Fleming & Daniel* for Appellant.

*Doby* and *Niblack* for Respondents.

WESTCOTT, J., delivered the opinion of the court.

Illegal assessments—that is, assessments wherein, independent of the exercise of a discretion as to value, there appears error in matter of law—are the assessments for which a party has a remedy by petition under Section 4 of Chapter 151 of the laws of Florida. This section provides *a remedy* for an illegal assessment, without reference to the provisions of any particular act prescribing *the mode and manner* of making assessments. The 79th Section of Chapter 1713 of the Laws of Florida enacts that "all acts and parts of acts heretofore passed relating to assessment and taxation are hereby repealed." Chapter 1713 is an act prescribing the *mode and manner* of making assessments. This general clause, repealing all laws relating to assessmenss in a law changing or regulating the *method* of assessment, cannot be held to repeal laws prescribing *a remedy* for illegal assess-

ments under any and all laws. It might as well be contended that wherever a certiorari would lie to set aside an illegal assessment anterior to this law, it would not now lie to correct an illegal assessment under it.

There cannot readily be imagined an act erroneous *in point of law*, whether it be that of an executive, legislative, or judicial officer, for which there does not exist a remedy. On the other hand, the general rule is that for the erroneous exercise of either a judicial, legislative or executive *discretion*, there does not exist a remedy through the medium of judicial supervision and review. As to pure legislative and executive discretions, judicial officers cannot, as a matter of course, control them. An instance of the exercise of a pure legislative discretion is to be found in an act which the Legislature deems advisable to adopt as a remedy for a conceived evil. This remedy, however inadequate to accomplish the result desired, cannot be disregarded by a judicial tribunal, unless in conflict with organic or constitutional provisions. This is also true of executive discretions. It is doubtful even whether the Legislature could authorize judicial tribunals to review the exercise of such discretions, legislative or executive. They are discretions belonging to different departments of the government. As to judicial discretion, I conceive the rule to be that it is within the power of the Legislature to provide for the review of a discretion of this character, and that in the absence of such legislation, the exercise of a pure judicial discretion by an inferior tribunal will not be reviewed. There are perhaps exceptions to this rule, but the case at bar is not one of them. In the case of Carter vs. Bennett, 4 Fla., 356, the Supreme Court, speaking of reviewing orders of the court upon motions for new trials, based upon a consideration of the facts, remark that such practice is wholly unknown in England, and in the United States courts, and that the State courts are about equally divided thereon. In that case, this court refused to review the exercise of discretion by the Cir-

cuit Court in the matter of a motion for a new trial where the error alleged was as to conclusions of fact. This decision caused the act of 1853, (Chapter 521, Laws of Florida,) by which this court is authorized and required to review such exercise of discretion in the matter of granting new trials. Whether, in the absence of legislation, this court or the Circuit Court can review a conclusion by the County Commissioners as to the value of land, in any form of proceeding, I think is doubtful. As to this particular case, I have no doubt. The statute invoked (Chapter 151, Laws of Florida,) provides a remedy by petition in case of an *illegal assessment*. The judgment authorized in such a proceeding is that the assessment is not "*lawfully made.*" The office of a petition under this law may be compared to that of a writ of error at common law, a certiorari in the nature of a writ of error, or to the effect of a motion in arrest of judgment, in an ordinary common law case. For instance, if the proceeding of the County Commissioners was the subject of a writ of error or a certiorari in the nature of a writ of error, (a question upon which I express no opinion,) the return would be a record of the proceeding alleged to be illegal. Upon that return, no question as to an erroneous exercise of a discretion vested by the law could be raised, and the court would be restricted to the consideration of questions of law arising upon that record. There are many cases of discretion vested in County Commissioners which are not subject to review.

The petition in this case sets forth an illegal assessment, in this, that the value fixed is too high; that the " full cash value " is not the sum assessed. The issue made is as to this fact. Testimony is taken and the court determines that the value fixed by the County Commissioners is not excessive. The case, as settled by the court, contains this conclusion of fact. I think the judge went beyond the authority conferred by the statute in attempting this review of the exercise of a discretion as to *values* vested in the County Com-

missioners. I think the purpose of the petition upon its face, and its legal effect, is to seek a review of conclusions of fact rather than to correct an illegality. I do not think the petition makes a case coming within the provisions of the statute, and for this reason I think the court should have refused to act upon it. In speaking of the discretion exercised by the County Commissioners in fixing the value upon lands, the Supreme Court of Massachusetts remark :

"No judicial officer, in determining a matter legally submitted to his discretion, can ever be required to be governed by the dictates of any judgment but his own. We are clearly of opinion that in refusing to abate the petitioner's taxes, the commissioners acted judicially upon a subject of which they had final jurisdiction, and in which the exercise of their discretion cannot be revised by any other tribunal. If the commissioners erred in their proceedings in matters of law, the petitioner may have a writ of certiorari. If this will give him no adequate redress of any grievance which he may have sustained, it is the fault of the law and not of the court." 19 Pick., 299.

To the same effect are the decisions of all the State courts that we have been able to examine.

The case is remanded, with directions to dismiss the petition.

RANDALL, C. J., delivered the following concurring opinion explanatory of the opinion of the court in the case of Gwynn vs. King, 14 Fla., 32 :

The opinion of the court in the case of Gwynn vs. Charles R. King, Tax Assessor, &c., is referred to in the brief of counsel for appellant, and it is insisted that, according to that opinion, the proceeding before the Circuit Judge by petition under the act of 1847–8, was the proper mode of redress in case of a complaint against an excessive assessment. Such was not the understanding of the court in that opinion. In

that case a bill in equity was filed for the purpose of enjoining the collection of a tax, on the ground of an excessive assessment. Authorities were quoted to show that "if one is excessively taxed and omit the course provided by law for his relief, the court will not enjoin the collection for the purpose of enabling him to bring his action to settle the legality of the tax." This was the language of a case in Mississippi. It was understood that that court intended to hold that a suit in equity could not be entertained to test a question of the legality of an assessment, where the only complaint was that the assessment was excessive as to the valuation. The further remark in the case of Gwynn vs. King, to-wit: that "the 4th section of chap. 151, Laws of 1847–8, provides an ample and convenient remedy by petition to the Circuit Judge, who will examine the matter and decide upon the *lawfulness* of the assessment," was not understood to assert or admit the proposition that an excessive assessment would be treated as an unlawful assessment. It was intended merely to suggest that the act referred to had provided a convenient mode of ascertaining whether an assessment was *lawfully* made. The whole argument in that case, as made by the court, touching the question, was that an *excessive valuation* for purposes of taxation was not an illegal assessment, and did not present a case for the interference of courts of law or equity, according to the practice and the exercise of jurisdiction by the judicial tribunals.

If it be said that our language in the case referred to might be construed to the intent that cases of *illegal* assessment included an *excessive* valuation, a reference to the statute itself must have been sufficient to show that such construction could not have been reasonably put upon it. The judgment to be given by the Circuit Judge was that the petition be dismissed, or that the assessment was "not lawfully made," if the assessment was "found to be illegal." In the case referred to the opinion of the court was, upon principle and authority, that a mere excessive valuation was not an illegal

assessment. Any other deduction from any isolated paragraph is against the whole opinion upon the subject. I must remark further, that I have doubts as to the power of this court to review, upon appeal, the determination of the Circuit Judge in this matter, and I consent to the judgment announced because the case was submitted without question as to this power, and the effect of the judgment is substantially the same upon the rights of these parties as though the appeal had been dismissed upon the determination that we could not, upon appeal, review the proceedings *had before* the Judge.