# Richmond.

OLD DOMINION STEAMSHIP COMPANY v. COMMONWEALTH.

MARCH 17, 1904.

1. TAXATION—*Situs of Vessels.*—Notwithstanding the fact that vessels
and barges are owned by a non-resident corporation, that they
have been enrolled under the Act of Congress at some port outside
the State of Virginia, and that they are engaged, in part, in inter-
state commerce, the legal *situs* of such vessels and barges for
the purpose of taxation is in the State of Virginia, where it appears
that they ply entirely between ports or points within this State,
carrying local freight and passengers and also freight and pas-
sengers to be delivered to the ocean-going steamers of the com-
pany, for which latter, through bills of lading and tickets, are
issued to points outside the State; that such vessels and barges
are adjuncts to and branches of the main line of the company
between New York and Norfolk; and that they are used upon old
established routes upon navigable waters within the State of Vir-
ginia, and cater particularly to local traffic.

Upon appeal from a finding of the State Corporation Com-
mission, entered on the —— day of November, 1903, declaring
the steamers Mobjack, Accomac, Hampton Roads, Luray, Vir-
ginia Dare, Brandon and Berkeley, and the steam tug Ger-
mania, and seven Barges, property of appellant, taxable under
the laws of the State of Virginia, and imposing a property tax
thereon for the year 1903.

*Affirmed.*

*William H. White,* for the appellants.

*Attorney-General William A. Anderson,* for the Commonwealth.

BY THE COURT.

The facts presented by the transcript of the record of the finding aforesaid are as follows:

That the Old Dominion Steamship Company was a nonresident corporation, having been incorporated by the Senate and House of Representatives of the State of Delaware; that it was then and had been for many years theretofore engaged in the transportation of passengers and freight on the Atlantic Ocean and communicating navigable waters, between the city of New York, in the State of New York, and Norfolk, and certain other ports within the State of Virginia. That said steamship company, in the prosecution of its said transportation business, owned and operated the vessel property above named; that these vessels, with the exception of the tug Germania, whose movements and use will be hereinafter stated, visited various ports or points within the State of Virginia, for the purpose of receiving freight and passengers, for which they issued bills of lading and tickets to points outside the State of Virginia; that owing to the shallow waters where these vessels plied it was impossible in most instances for the larger ocean-going steamers of the company to be used; that in consequence the vessels above enumerated were used to receive the freight and passengers as aforesaid, giving the shipper of freight a bill of lading for the same, destined to New York and other points outside of Virginia, and the passenger a ticket to his destination, and thus transported such freight and passengers to deeper water at Norfolk and Old Point Comfort where, upon such bills of lading and tickets, the passengers and freight were transferred to one of the larger ocean-going vessels of the steamship company, and to the ultimate destination, namely, New York, and

elsewhere outside of Virginia, was reached; that any other business transacted by the above-named vessels was incidental in character and comparatively insignificant in amount; that the said vessels were built and designed for interstate traffic especially, and were adjuncts to or branches of the main line of the Old Dominion Steamship Company between New York and Norfolk; that each and all of the said vessels were regularly enrolled, under the United States laws, outside of the State of Virginia with the name and port of such enrollment painted on the stern of each of them; that the said vessels, though regularly enrolled and licensed for coastwise trade, were then used on old established routes upon navigable waters within Virginia as follows, to-wit:

First: The steamer Hampton Roads, between Fort Monroe and Hampton and Norfolk.

Second: The steamer Mobjack, between points in Mathews and Gloucester counties and Norfolk.

Third: The steamers Luray and Accomac, between Smithfield and Norfolk.

Fourth: The steamer Virginia Dare, between Suffolk and Norfolk.

Fifth: The steamers Berkeley and Brandon, between Richmond and Norfolk; and

The steamers Berkley and Brandon ply between Richmond and Norfolk. These two steamers were completed in the year 1901 or early in 1902, one of them having been constructed at the William R. Trigg ship yard in the city of Richmond, and the other outside of the State of Virginia. Early in the year 1902, they were placed upon the line between Norfolk and Richmond, one steamer leaving Richmond each evening and arriving in Norfolk each morning, thus giving a night trip every night each way between Richmond and Norfolk. At the time these steamers were placed upon this route and since that time, the Old Dominion Steamship Company has by public advertisement

called attention to the fact that these two steamers were espe-
cially fitted in the matter of stateroom accommodations for car-
rying passengers between Richmond and Norfolk, and the said
two steamers have since that time been advertising for the car-
riage of passengers and freight on their route between Rich-
mond and Norfolk, and have been regularly carrying
freight and passengers between the said two points in
Virginia as well as taking on freight and passengers
for further transportation on their ocean steamers at Norfolk.
The Old Dominion Steamship Company applied under the
revenue laws of the State of Virginia for a license to sell liquor
at retail on each of these steamers, and on July 1, 1902, there
was granted through the Commissioner of the Revenue of the
city of Richmond a license to the Old Dominion Steamship
Company for the sale of liquor at retail on each of these steam-
ers, said licenses to expire on April 30, 1903. On or about
the same time, the said Steamship Company complied with the
revenue laws of the United States and paid the necessary reve-
nue tax through the custom house at the city of Richmond for
the purpose of selling liquor at retail on each of these steamers.
In the spring of 1903, the said steamship company, in order to
obtain licenses to sell liquor at retail on each of these steamers,
applied for the same in the city of Richmond and complied with
the requirements of section 143 of the new revenue law, ap-
proved April 16, 1903, and so obtained licenses for the year
1903-1904 to sell liquor at retail on each of these steamers on
their route between the city of Richmond and Norfolk, and like-
wise, on or about the same time, complied with the revenue laws
of the United States in the matter of selling liquor at retail on
each of the said steamers on said route.

Sixth: The steam tug Germania, which was used in the har-
bor of Norfolk and Hampton Roads for the purpose of docking
the large ocean-going steamers of the Old Dominion Steamship
Company, and the transferring from different points in those

waters freight from connecting lines destined to points outside of Virginia.

And the court, having maturely considered said transcript of the record of the finding aforesaid and the arguments of counsel, is of opinion that the legal *situs* of the vessels and barges assessed for taxation by the finding of the State Corporation Commission is, for that purpose, within the jurisdiction of the State of Virginia, and that said property is amenable to the tax imposed thereon—notwithstanding the fact that said vessels and barges are owned by a non-resident corporation, that they may have been enrolled under the Act of Congress at some port out-side the State of Virginia, and that they are engaged, in part, in interstate commerce—and doth so decide and declare. Therefore, it seems to the court here that the finding of the State Corporation Commission appealed from is without error, and said finding is approved and affirmed. It is further considered by the court that the appellee recover against the appellant thirty dollars' damages, and its costs by it about its defence expended upon this appeal. All of which is ordered to be entered upon the order book here, and certified to the State Corporation Commission, to be entered of record in its order book there, as required by law.

*Affirmed.*