GERMAN-AMERICAN LUMBER COMPANY, A CORPORATION *et al., Appellants,* v. L. M. BARBEE, *Appellee.*

1. The law contemplates that a wide discretion be accorded to the tax assessor in the valuation of property for the purposes of taxation. In the absence of a clear and positive showing of fraud or of an illegal act or of an abuse of discretion rendering an assessment authorized by law so arbitrary and discriminating as to amount to a fraud upon a taxpayer or to a denial of the equal protection of the laws, the courts will not in general control the discretion of the tax assessor in making valuations for taxing purposes. The burdens of taxation cannot be made exactly equal.

2. The mere fact that where timber lands in a county are generally assessed at $2.00 per acre when there are no timber leases thereon, and where there are such timber leases, the lands are generally assessed at $1.50 per acre and the timber leases thereon are separately assessed at $1.00 per acre, does not render a particular assessment of the land invalid where no actual fraud is shown, and it appears that the assessment was made by the tax assessor upon what he considered the value of the lands, and not upon an arbitrary valuation, and there is corroborating testimony as to the value of the land, and that the lands may be enhanced in value by the timber leases.

This case was decided by the court En Banc.

Appeal from the Circuit Court for Calhoun County.

The facts in the case are stated in the opinion of the court.

*Blount & Blount & Carter,* for Appellants;

*Liddon & Carter,* for Appellee.

WHITFIELD, C. J.—The bill of complaint in this cause

alleges in brief that under contracts with B. P. Jones and
J. R. Saunders the owners of described lands in Calhoun
county the appellant corporation "has certain rights in
and the ownership of the timber upon said lands, and as
a part of the obligation assumed by the said contracts
agreed  *  *  *  to pay all the taxes legally due upon
said lands during the period mentioned in said contracts;"
that said lands for the year 1907 "were assessed and val-
ued separately and independently from the timber thereon
and said timber was likewise for said year assessed to
the German-American Lumber Company and valued sep
arately and independently from said lands at the uniform
valuation of $1.00 per acre; that the lands are assessed
at $1.50 per acre except a small portion which is assessed
at $2.00 per acre; that the taxes on the timber have been
paid and the taxes on the land have been paid except
$771.31 which complainant alleges is excessive and illegal
in that "in making the assessments and valuations for
taxes in said county for said year, the assessor adopted an
arbitrary plan or rule whereby timbered lands when as-
sessed to the owner, and where no leases of the timber or
rights to timber or turpentine privileges existed in an-
other, should be assessed at a uniform valuation of $2.00
per acre without regard to the real value, but when such
timber rights or leases or timber privileges existed in
another such lands should be assessed uniformly at $1.50
per acre, and the timber rights or leases or timber privi-
leges should be assessed at a uniform valuation of $1.00
per acre without regard to the real value in either case;
that in pursuance of such an arbitrary plan or rule, prac-
tically all assessments of timbered lands and timber and
turpentine rights and leases upon timbered lands were
assessed for said year and in said county in the manner
stated above, in consequence whereof most of the lands
of your orators Jones and Saunders were assessed for

said year at a uniform valuation of $1.50 per acre, amounting to 56,296 53/100 acres, while the remainder amounting to 9770 92/100 acres, were assessed at a uniform valuation of $2.00 per acre and timber rights or leases on all of the said lands at a uniform valuation of $1.00 per acre, the lands being assessed separately from the leases as aforesaid, and in the manner before stated; that in pursuance of such arbitrary plan or method of assessment all other timbered lands in said county upon which no timber rights existed in another and which lands were assessed to the owners, were assessed at a uniform valuation of $2.00 per acre without regard to the real value, except that in a few instances they were assessed at $1.50 per acre and in one case a large body of land belonging to the Brown Timber Co. were for a most part assessed at $.75 per acre and none at a valuation exceeding $1.50 per acre for said year; that the timbered lands and the timber thereon upon which no timber rights or leases existed in persons other than the owners, and which were assessed to the owners at $2.00 per acre were as valuable and their cash market value was as great as were the timbered lands and timber rights thereon of the said Jones & Saunders and others, which lands without the timber were assessed at $1.50 and $2.00 per acre in addition to the assessment of $1.00 per acre, made for and on account of the timber and turpentine rights thereon which are assessed to persons other than the owners and paid upon as timber assessments. By reason of said assessment having been made in pursuance of the arbitrary rule or plan aforesaid, your orators and the lands before mentioned, have been discriminated against in the making of assessments to the extent aforesaid amounting in aggregate at the rate of taxation imposed upon the property in said county for said year for State and county purposes to the sum before mentioned; that the assessments were made in pur-

suance of the plan aforesaid without regard to the true value of the lands or timber rights or any of them, but exclusively upon the fact whether the timber and the lands were assessed in one assessment to the owners, or separately, the lands to the owners, and the timber rights to other persons than the owners of the lands. The said assessments constitute apparent liens upon said lands and said assessments and liens and the threatened advertisement and sale of the said lands by the defendant cast a cloud over the title thereto; that your orators are willing and hereby offer to pay all the taxes assessed for said year on said lands which your Honor may find to be legal and equitable;" that the defendant Barbee is the tax collector of Calhoun county and threatens to and will advertise and sell said lands for said illegal taxes; that complainant tendered the taxes legally due, but they were not accepted. It is prayed that $771.31 of the taxes levied and assessed as aforesaid be decreed to be illegal, inequitable and unjust; that complainants are not legally liable for the same; that the tax collector be enjoined from collecting said excessive amount of taxes and from advertising and selling the lands for said excessive taxes, and for general relief. J. R. Saunders and B. P. Jones who were parties complainant to the original bill having died the suit was revived in the names of their respective successors in title. The defendant tax collector by answer denied "that in pursuance of any arbitrary plan or method of assessment all other timbered lands in said county upon which no timber rights existed in another and which lands were assessed to the owner were assessed at a uniform valuation of one dollar without regard to the real value;" denies an arbitrary assessment and discrimination against complainants in the assessments made; denies an excessive valuation as alleged, and avers that the lands referred to are more valuable than any other large bodies and were

assessed at the true value. A replication was filed and testimony was taken. The court on final 'hearing dismissed the bill of complaint and the complainants appealed.

The question to be determined is whether the assessment of the lands referred to is illegal because the valuation is arbitrary and excessive. The statutes contain provisions that the tax assessor shall ascertain by personal inspection, when not already sufficiently acquainted therewith, the value of the lands and assess them at their full cash value.  *  *  *  In case any land shall be timbered, and the timber or the right to turpentine same shall belong to a person other than the owner of the land, the assessor shall assess the value of the land independent and distinct from the value of the timber and the turpentine privileges and shall assess the value of such timber and of such turpentine privileges separate and distinct from the said land and from each other, assessing the value of the land and of the timber and of the turpentine privileges to the owners respectively thereof;" and that "the Board of County Commissioners shall have full power to equalize the assessment of the real estate  *  *  *  and for that purpose may raise or lower the value fixed by the  *  *  *  assessor  *  *  *  on any particular piece of real estate." Specific and definite provisions are made for hearings by the County Commissioners of complaints as to the valuation of property as assessed. Sections 20, 23 and 24, Chapter 5596, and section 1, Chapter 5725 Acts of 1907. Sections 522, 525, 526 General Statutes of 1906.

There is no allegation or proof that complaint was made to the County Commissioners of the alleged excessive valuation of the lands as should have been done by the complainant if the legality of the assessment is to be attacked

32—Vol. 59.

on the ground that the valuation is discriminatory and
excessive. On the contrary there is evidence that no such
complaint was made to the County Commissioners. The
tax assessor was examined as a witness and denied that
without regard to the real values he adopted an arbitrary
rule or plan or a uniform valuation in assessing lands
and the timber rights thereon as alleged; and testified
that he made the assessment here assailed upon what he
"considered the value of the lands." He considered the
property mentioned "the best body of timber in the county,
the best body of land in the county." A member of the
Board of County Commissioners testified that the assess-
ment for 1907 was approved by the County Commission-
ers; that the assessment of the timber lease was separate
and distinct from the land; that land worth $2.00 per acre
is not necessarily assessed at $1.00 per acre when the tim-
ber lease on the land is assessed at $1.00 per acre, "for the
reason that land might be enhanced in value in the oper-
ation of that lease. The fact that the lease depleted the
timber, might make it more valuable for other purposes,
*  *  *  for farming purposes." Referring to this land
the witness said he considered "it the best tract in the
county." There was testimony that timber lands generally
in the county were assessed at $2.00 per acre where there
were no timber leases on it, and that the timber leases
are assessed at $1.00 per acre, but it is not shown that the
land involved here was not worth the valuation at which
it was assessed for taxation. A witness for the complain-
ant testified that the lands "might possibly be worth
$3.50 per acre;" that some of it had "been selling for
$4.00 and $5.00." There is clear and positive testimony
in support of the answer of the defendant tax collector,
and the evidence is sufficient to sustain the decree in favor
of the defendant. The law contemplates that a wide dis-
cretion be accorded to the tax assessor in the valuation

of property for the purposes of taxation.   In the absence of a clear and positive showing of fraud or of an illegal act or of an abuse of discretion rendering an assessment authorized by law so arbitrary and discriminating as to amount to a fraud upon a taxpayer or to a denial of the equal protection of the laws, the courts will not in general control the discretion of the tax assessor in making valuations for taxing purposes.   The burdens of taxation cannot be made exactly equal.   See 2. Cooley on Taxation, 1440 *et seq;* King v. Gwynn, 14 Fla. 32.   No actual fraud is alleged in this case and the acts alleged even if fully sustained by proofs are not in effect a fraud upon the complainants; and in view of the entire evidence no such abuse of discretion in the tax assessor is shown as to render illegal the assessment complained of.

In the case of Logan v. Washington County, 29 Pa. St. 373, the court held that the value of the land was not enhanced by the separation of the interests in the land and in the coal in it.   Here there is testimony that the separation of the interests in the land and the timber thereon might enhance the value of the land.

The decree is affirmed.

All concur.

Petition for rehearing in this case denied.