THE ARUNDEL CORPORATION v. STETSON O. SPROUL, as Tax Collector, of Palm Beach County.

186 So. 679.
Opinion Filed January 24, 1939.
Rehearing Denied February 14, 1939.

168

*Arthur H. Shoupe* and *Loftin, Stokes & Calkins,* for Appellant;

*Harry A. Johnston* and *Sidney J. Catts, Jr.,* for Appellee.

CHAPMAN, J.,—This case is here on appeal from a decree by the Circuit Court for Palm Beach County, Florida, dismissing an amended bill of complaint seeking to set aside as illegal, null and void an assessment and levy of personal property taxes of $250,000.00 on the Hallandale, and other dredges, and dredging equipment situate and being in Lake Okeechobee, Palm Beach County, Florida, from June, 1934, to December, 1935. The dredges and equipment were used by the plaintiff in the construction of dykes around Lake Okeechobee under the provisions of a contract with the Federal Government. The amended bill of complaint alleged that other dredging companies were engaged in like work, using similar equipment in connection therewith, but the taxing authorities of Palm Beach County had systematically, intentionally and arbitrarily discriminated against the property of the plaintiff. The taxes were not paid and a warrant was issued, predicated on the aforesaid assessment of $250,000.00, for the sum of $23,750, being the amount of the taxes claimed to be due, and the dredge Hallandale was advertised and sold by the Tax Collector of Palm Beach County to satisfy the aforesaid sum. The parties will be referred to in this opinion as they appeared in the lower court, as plaintiff and defendant.

It was contended by counsel for the Tax Collector of Palm Beach County that the property of the plaintiff acquired a situs in Florida for the purpose of taxation and was therefore subject to taxation because the property was in Palm Beach County on January 1, 1935, as well as prior

and subsequent thereto. The description of the property owned by the plaintiff as having its situs in Florida on January 1, 1935, and subject to taxation, is set out or accurately described in the pleadings. Counsel for plaintiff contends that the property assessed for taxes, as well as the Hallandale, advertised and sold under a Tax Collec.or's warrant in the total sum of $23,750.00, did not have a situs in Palm Beach County on January 1, 1935, sufficient in law for taxation purposes; that the Hallandale was registered and documented in the office of the United States Collector of Customs at the Port of Baltimore, Maryland, under date of December 27, 1928; that such registration existed on January 1, 1935, and had not been changed; that it was plaintiff's intention to return the Hallandale to Baltimore, its port of registration, after it had performed certain government contracts in Florida waters and elsewhere; that the Hallandale had been employed for dredging purposes in the intercoastal waterways between Jacksonville and Miami between the dates of January, 1933, and May, 1934. It is contended that the dredges of the plaintiff were temporarily in Florida and it had no situs in Florida for taxation purposes.

The case of Johnson, Collector, v. Debary-Baya Merchants' Line, 37 Fla. 499, 19 So. 640, is cited. The facts in that case show that the ownership of the vessels was in a New York corporation which maintained an office in said City. The vessels were registered in the Customshouse in the State of New York where the property had been annually and regularly returned to the City, County and State of New York for taxation purposes. The vessels were sent into Florida waters and elsewhere when the demands of trade, business or commerce rendered it necessary or profitable, and for long periods of time some of the vessels operated on the St. Johns River between Jacksonville and

Sanford; its business, trade or commerce likewise required the vessels to go into the waters of other States and these vessels had not been connected exclusively with trade or commerce in Florida waters when they were assessed by the Tax Collector of Duval County, Florida, for taxation purposes. Paragraph 7 of the bill of complaint showed that the vessels had a New York ownership and had not become so blended with commerce and business of the State of Florida as to make them taxable in Florida, and that their status for taxation purposes had not been changed from the registry in the New. York Customshouse. It was held in the case, and properly so, that the vessels had not acquired such a situs in Florida as to be subject to taxation, and when in Florida were engaged in commerce between other States and not exclusively within waters of the State of Florida and therefore were not subject to taxation in Florida.

In the case of National Dredging Company v. State, 99 Ala. 462, 12 So. 720, that court had before it a similar question. A dredging company, being a Delaware corporation, contracted with the United States Government to do certain dredging work in Mobile, Alabama, which it began in 1891, and completed in July, 1892. The dredging equipment was taken into Alabama from waters of other States when the performance of the contract was begun and the Tax Assessor of Mobile, County, Alabama, assessed the property of the dredging company for taxation. It was contended that the property was not subject to taxation by the Tax Assessor of Mobile County, Alabama, because the vessels were registered in the Customhouse at Wilmington, Delaware. The property had remained exclusively in the State of Alabama during the time that the contract was being performed, and the Supreme Court of Alabama upheld the assessment made by the Tax Assessor of Mobile

County. See North American Dredging Co. v. Taylor, County Treasurer, 56 Wash. 565, 106 Pac. 162, 29 L. R. A. (N. S.) 105.

As a general rule vessels engaged in state or interstate traffic or commerce, with no established situs, but going in and out of a port upon a fixed run, or as the necessities of the business or commerce engaged upon may demand, or when engaged upon no fixed schedule, but sailing from one port to another as a carrier of state, interstate, or international traffic, can be assessed for taxation purposes at the home port, or at the domicile of the owner, but a vessel may be assessed for taxation purposes without reference to the home port or the residence of the principal owner or agent, when it is put to such use as to impress it with a local character. The lower court held that the property described in the amended bill of complaint in the case at bar had a situs for taxation purposes in Palm Beach County from June, 1934, continuously until the latter part of 1935, and was therefore subject to taxation. See McRae v. Bowers Dredging Co., 90 Fed. 360; Galveston v. J. M. Guffey Petroleum Co. (Tex. Civ. App.), 113 S. W. 585; State v. Higgins Oil & Fuel Co., (Tex. Civ. App.), 116 S. W. 617; Old Dominion Steamship Co. v. Virginia, 102 Va. 576, 46 S. E. 783, 198 U. S. 299, 25 Sup. Ct. 686, 49 L. Ed. 1059, 3 A. & E. Ann. Cas. 1100.

It is next contended that Tax Assessor of Palm Beach County, Florida, in making up the tax roll intentionally omitted and neglected to assess for taxation purposes the property of other dredging companies engaged in the same work as the plaintiff, and in doing so there was an illegal discrimination against the property of the plaintiff in favor of the owners of similar property located in Palm Beach County, which said discrimination amounted in law to a constructive fraud. Several decisions of this Court have

been cited to sustain this contention. The law contemplates that assessing officer shall make just, fair and impartial valuations for assessment purposes, without discrimination, and that these values when made in the manner provided by law and with proper regard to their location, use, values, etc., the assessment so made, in general, will not be disturbed by the courts. See Camp Phosphate Co. v. Alles, 77 Fla. 341, 81 So. 503.

In the case of City of Tampa v. Palmer, 89 Fla. 514, 105 So. 115, this court said:

"The fixing of a valuation upon property by a tax assessor for purposes of taxation, and the equalization thereof by a board of equalization, are administrative acts, involving the exercise of administrative discretion, and a court of equity will not in general control that discretion unless it is illegally or fraudulently exercised or exerted in such manner or under such circumstances as will amount in law to a fraud. King v. Gwynn, *supra* (14 Fla. 32); Wade v. Murrhee, *supra* (75 Fla. 494, 78 South. Rep. 536); Board of Com'rs. of Finney County v. Bullard, 77 Kan. 349, 94 Pac Rep. 129, 16 L. R. A. (N. S.) 807. The jurisdiction of courts of equity in such cases is one of necessity. Relief will not be granted by courts of equity in such cases merely upon the ground that the valuation is excessive, for we have seen that mere excessive valuation when due solely to error in judgment, inadvertence or mistake, does not amount to fraud (Shear v. Commissioners of Columbia County, *supra*, 14 Fla. 146); and the assumption of jurisdiction of such a case by a court of equity, would be an attempt to regulate and control the administrative discretion expressly vested by law in another body, and to grant relief in equity when there exists a plain, adequate and complete remedy at law. German-American Lumber Co. v. Barbee, *supra* (59 Fla. 493, 52 South. Rep. 292); Taylor v. Secor,

92 U. S. 575, text 614, 23 L. Ed. 663.   See also the recent case of McGregor v. Hogan, 263 U. S. 234, 68 L. Ed. 282 . . . . . ."

It is fundamental that all property should bear its just burden of taxation.   If property owned by a person is assessed for taxation while property of other persons, having the same classification and subject under the law to be assessed for taxes and the assessing officer systematically, intentionally and purposely omits from the assessment roll the property, it operates as a denial of the equal protection of the law and the · property owner· who has been discriminated against has a remedy.   See Folsom v. Bank of Greenwood, 97 Fla. 426, 120 So. 317; Folsom v. Bank of Malone, 97 Fla. 433, 120 So. 319; West Virginia Hotel Corp. v. W. C. Foster Co., 101 Fla. 1147, 132 So. 842.

It is next contended that the assessment of personal property taxes of the plaintiff by the Tax Assessor of Palm Beach County was void because the owner had no knowledge of the assessment as made by the Tax Assessor, and did not have an opportunity to contest the amount of the assessment before the Board of County Commissioners, sitting as an Equalization Board, and likewise that the property assessed is vague, indefinite and so uncertain as to description which renders the alleged assessment void and that there does not exist a substantial compliance with Section 929 C. G. L.   Likewise it is contended by counsel for the defendant that plaintiff failed to comply with Sections 917 and 919 C. G. L.   The record shows that the Tax Assessor made two trips to Lake Okeechobee for the purpose of obtaining information for the basis of an assessment of the property of the plaintiff; he left forms to be completed by an officer or agent of the Arundel Corporation at Canal Point, and requested that a description and valuation of

the taxable property be inserted and transmitted to him, but the plaintiff failed so to do.

Thereupon the Tax Assessor assessed the property of the plaintiff at the sum of $250,000.00, which was approved by the County Commissioners, sitting as a Board of Equalizers, and in November, 1935, a statement of the amount of taxes was mailed to the plaintiff. The plaintiff contends that the property assessed by the Tax Assessor of Palm Beach County was likewise assessed by the Tax Assessor of Martin County, but the Chancellor heard the evidence and found against the plaintiff on this point. There is a sharp conflict or dispute in the testimony as to the value of the property of the plaintiff located in Lake Okeechobee and assessed for taxation by the Tax Assessor in Palm Beach County. Some three of four employees of the plaintiff testified that the Hallandale, one of its dredges, had a market price of from $30,000.00 to $35,000.00, and the General was valued at approximately $10,000.00, and the other property had a corresponding value. It was further developed that the exact property assessed for taxation was covered by Marine Insurance for approximately $500,000.00, while the contract performed by the plaintiff from June, 1934, to December, 1935, was worth from one and a half to two million dollars.

The amended bill of complaint is bottomed upon the theory that the property therein described was not: (a) subject to taxation in Florida, but was subject to taxation at its home port or place of registry; (b) the assessments made, if otherwise lawful, were illegal because of intentional and arbitrary discrimination; (c) that the amount of the assessment was grossly excessive; (d) there was not a substantial compliance with Section 929 C. G. L.; (e) the property so assessed was then on the assessment roll of Martin County; (f) the claims of Palm Beach County,

Florida, against it for taxes was void and illegal; (g) that it is a solvent business going concern and offered to do equity by paying the amount of the taxes which the court found to be due on said property. The allegations of the amended bill fail to meet the requirements of Section 1038 C. G. L.

In the case of Louisville & N. R. R. Co. v. Amos, 98 Fla. 350, 123 So. 745, this Court said:

"While it is uniformly held that mere errors of judgment by taxing officials in making assessments of property for taxation, will not constitute a proper basis or support for claims of unjust discrimination, yet, on the other hand it is equally well settled, in this and other jurisdictions, that intentional, systematic, under-valuation by taxing officials of other taxable property of the same class, which, in effect, amounts to an intentional violation of the essential principles of practical uniformity, contravenes the constitutional rights of one whose property is over valued, Camp Phosphate Co. v. Allen, 77 Fla. 341, 81 So. R. 503; Sioux City Bridge Co. v. Dakota County, 260 U. S. 441; 67 Law Ed. 340; Sunday Lake Iron Co. v. Townshp of Wakefield, 247 U. S. 350, 62 Law Ed. 1154; City of Tampa v. Palmer, 89 Fla. 514, 105 So. R. 115.

"Uniformity and equality of rate and just valuation are required. Unlawful discrimination is forbidden. Where illegal, discrimination is practiced, it is immaterial whether it is effected by a single assessing board, or through the action of two independent boards or officials. Baker v. Drusedow, 263 U. S. 137, 68 Law. Ed. 212. The assessment is by the State. It is an exertion of sovereign power. That two or more administrative agencies may be employed, is merely incidental. Unlawful discrimination by one taxing official or board can not be justified or excused on the ground that it was not informed of the action of other tax-

ing officials. But in this case the bill alleges and the demurrer admits that the defendant did know of the lower valuation of like property by local tax assessing officers.

It is also well settled that a tax payer, although assessed on a basis of not more than full value, may be unlawfully discriminated against by undervaluation of property of the same class of other tax payers. Southern Ry. Co. v. Watts, 260 U. S. 519, 67 Law. Ed. 375. And this may be true, although the discrimination is effected through the action of different taxing officials. Greene v. Louisville & I. R. Co., 244 U. S. 499, 61 L. Ed. 1280." See City of Bradeston v. Seaboard Air Line R. Co., 100 Fla. 606, 130 So. 21; Ranger Realty Co. v. Hefty, 112 Fla. 654, 152 So. 439; City of Tampa v. Colgan, 111 Fla. 538, 149 So. 587.

In reviewing the entire record of the case, we are impressed with the sharp conflict and dispute of the witnesses and evidence as to the value of the property assessed for taxation. The other questions of law were settled correctly by the Chancellor below. We believe the plaintiff should be allowed the right and privilege to be heard on the question of value of the property assessed for taxation by the Tax Assessor of Palm Beach County. We think an amended bill should be filed complying fully with Section 1038 C. G. L., and paying into the court the amount of the money for taxes that could have been lawfully assessed as viewed by the plaintiff. Louisville & N. R. R. Co. v. Amos, *supra*. The amended bill shall be filed within thirty days after issuance of the mandate in this cause; otherwise the decree appealed from shall stand affirmed. It is so ordered.

Whitfield, P. J., and Brown, J., concur.

Terrell, C. J., and Buford, J., concur in the opinion and judgment.

Thomas, J., not participating, as authorized by Section

4687 Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

## On Petition for Rehearing

Per Curiam.—On petition for rehearing it has been suggested that this Court failed or omitted and did not consider the testimony of the Tax Assessor of Palm Beach County and plaintiff's Exhibits Nos. 9 to 11, inclusive; that the legal effect of the testimony not considered by this Court in the original opinion renders the said assessment not only invalid but the same is in contravention of Sections 929 and 930 C. G. L., and Auburndale v. Kline, 82 Fla. 121, 89 So. 427, and other authorities cited.

The testimony shows that the Tax Assessor·went from his office at West Palm Beach to Lake Okeechobee around January 1, 1935, and made a study or investigation of the property holdings of the appellant then on Lake Okeechobee which were subject to taxation and located in Palm Beach County on the 1st day of January, 1938; and he made a subsequent trip and tried to contact the officers of the apellant but failed, after a thorough investigation, study and inquiry, and after considerable correspondence with others having a knowledge of the property of the appellant, the Tax Assessor of Palm Beach County, concluded that on January 1, 1935, the Arundel Corporation owned the property now involved in this suit and that the same was subject to taxation and in Palm Beach County on the 1st day of January, 1935. He subsequently completed his tax roll so as to include the said property here involved. We do not think or believe that the evidence as shown by the record will justify this Court in holding the assessment here involved is invalid. The petition for rehearing is denied.

Whitfield, Brown and Chapman, J. J., concur.

Terrell and Buford, J. J., concur in opinion and judgment.

THOMAS, J, not participating as authorized by Section 4687 Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.