CARROLL, Judge.
Plaintiffs invoked equity jurisdiction conferred by statute[1] to contest the legality of ad valorem tax assessments on their lands for 1962.[2] The assessments were challenged on the ground that illegal methods of valuation were used, resulting in unjust discrimination and excessive valuation of the plaintiffs’ properties thereby unlawfully increasing their taxes in violation of their organic rights. The lands involved are subject to taxation and' are not claimed to be exempt. Plaintiffs did not furnish evidence of payment or deposit in the court a portion of the taxes as provided for by the statute. For that reason the chancellor granted defendants’ motion and dismissed the complaint with prejudice, and plaintiffs appealed.
Relying on certain decisions of the Florida Supreme Court,[3] appellants contended the statutory requirement for paying the admitted amount of taxes at the outset of the case was rendered ineffective, and that even if the statute were effective it would not require any payment at the outset in this case because appellants do not know what method of assessment may properly be employed or what its result would be, and therefore can not determine the proper tax amounts. We hold those contentions are without merit. See Florida *144 Land Co. v. Graham, 97 Fla. 476, 121 So. 462; Louisville & N. R. Co. v. Amos, 98 Fla. 350, 123 So. 745; Devane v. Leatherman, 113 Fla. 216, 151 So. 530; Ranger Realty Co. v. Hefty, 112 Fla. 654, 152 So. 439; Buchanan v. City of Tampa, 134 Fla. 618, 184 So. 104; Arundel Corporation v. Sproul, 136 Fla. 167, 186 So. 679; City of Tampa v. Wiley, 137 Fla. 126, 188 So. 134; City of Fort Myers v. Heitman, 149 Fla. 203, 5 So. 410.
In 1941, after the decisions relied on by appellants, the legislature provided that suits challenging assessments must be instituted within 30 days (later changed to 60 days) from the time the assessments shall become final. See Ch. 20722, § 1, Laws of Florida 1941; and § 192.21, Fla.Stat, F.S.A.
In a case such as this which challenges new assessments, filed within 60 days after they have become final, no sound reason exists for dispensing with the express requirement of § 196.01 for payment of the taxes admittedly due. The rule that one who seeks equity must do equity is particularly applicable in suits of this kind, because a taxpayer who complains that his assessment is excessive should not be allowed to escape paying any tax at all for the protracted period which usually is involved before a final decision is rendered.[4]
Regarding appellants’ contention that they should not pay any part of the tax because they can not determine the exact amount due, appellees point out that the statute does not require plaintiffs to determine and pay the exact amounts which are legal and proper for that year, but the statute expressly requires them to pay such amounts as they shall admit are legally due. They may not escape that duty by saying they have no basis for choosing or determining such an amount. For example, appellants could use the 1961 tax amounts, or they could apply the known 1962 millage to the values assessed for 1961 which they set out in the complaint presumably as being appropriate while contending the larger 1962 assessments were improperly arrived at and excessive.
Bearing directly on the questions involved here the Supreme Court of the United States has said :[5]
“We have announced more than once that it is the established rule of this court that no one can be permitted to go into a court of equity to enjoin the collection of a tax until he has shown himself entitled to the aid of the court by paying so much of the tax assessed against him as it can be plainly seen he ought to pay; that he shall not be permitted, because his tax is in excess of what is just and lawful, to screen himself from paying any tax at all until the precise amount which he ought to pay is ascertained by a court of equity. And that the owner of property liable to taxation is bound to contribute his lawful share to the current expenses of government, and cannot throw that share on others while he engages in an expensive and protracted litigation to ascertain that the amount which he is assessed is or is not a few dollars more than it ought to be. But that before he asks this exact and scrupulous justice he must first do equity by paying so much as it is clear he ought to pay, and contest and delay only the remainder. State Railroad Tax Cases, 92 U.S. 575 [23 L.Ed. 663].
“The bill attempts to evade this rule by alleging that the tax is wholly void, and, therefore, none of it ought to be paid, and that by reason of the absence *145 of all uniformity of values, it is impossible for any person to compute or ascertain what the stockholders of the complainant bank ought to pay on the shares of the bank. In the case above mentioned this court said, in answer to the first objection: ‘It is clear that the road-bed within each county is liable to be taxed at the same rate that other property is taxed. Why have not complainants paid this tax? It is said they resist the rule by which the value of their road-bed in each county is ascertained. But surely they should pay tax by some rule. * * * Should they pay nothing, and escape wholly, because they have been assessed too high? These questions answer themselves. Before complainants seek the aid of the court to be relieved of the excessive tax, they should pay what is due. Before they ask equitable relief, they should do that justice which is necessary to enable the court to hear them. * * * >»
For a court to permit a taxpayer to challenge an assessment on the basis presented in this suit without paying the portion of the tax which should be recognized as legal and due, and to wait until final determination of the cause before paying any part of such tax, would amount to (1) judicially repealing the statutory requirement to the contrary, (2) renouncing the rule that he who seeks equity must do equity in cases challenging assessments, and (3) it would have the injurious practical effect of allowing one who concedes his property is taxable to avoid for months or years paying any tax thereon and thus shift his tax burden onto other citizens and taxpayers.
In holding that in order to challenge the assessments the plaintiffs were required to do equity by paying into the court the amounts which they “shall admit to be legal and due,” the chancellor was eminently correct. We hold, however, that the court went further than the circumstances of the case required when he made the dismissal with prejudice. The order should be modified to allow the plaintiffs to amend to offer to do equity and submit therewith for deposit in the registry of the court the amounts they “shall admit to be legal and due” as taxes on their properties for the year in question. See Louisville & N. R. Co. v. Amos, supra, 98 Fla. 350, 123 So. 745; Ranger Realty Co. v. Hefty, supra, 112 Fla. 654, 152 So. 439; Arundel Corporation v. Sproul, supra, 136 Fla. 167, 186 So. 679; City of Tampa v. Wiley, supra, 137 Fla. 126, 188 So. 134; City of Fort Myers v. Heitman, supra, 149 Fla. 203, 5 So. 410. In those cases even though no payments were made or deposited with the filing of the complaint, the object of the statute was accomplished by making provision for plaintiffs to make such payments as a condition of proceeding with the cause. Thus in Arundel Corporation v. Sproul, supra (186 So. at 683) the Supreme Court said:
“ * * * We believe the plaintiff should be allowed the right and privilege to be heard on the question of value of the property assessed for taxation by the Tax Assessor of Palm Beach County. We think an amended bill should be filed complying fully with Section 1038, C.G.L. [§ 196.01, Fla. Stat., F.S.A.] and paying into the court the amount of the money for taxes that could have been lawfully assessed as viewed by the plaintiff. Louisville & N. R. R. Co. v. Amos, supra. The amended bill shall be filed within thirty days after issuance of the mandate in this cause; otherwise the decree appealed from shall stand affirmed. It is so ordered.”
In the instant case the complaint did not contain an offer to do equity, but alleged inability to' determine an amount due, as a reason and excuse for not doing so. We hold, as was done in the Arundel Corporation case, that the plaintiffs should be allowed to be heard on the questions they raised relating to the assessments on their lands for 1962, and accordingly the order dismissing the cause with prejudice is *146 hereby modified to provide that the plaintiffs may file an amendment to the complaint offering to do equity as required by § 196.01, Fla.Stat., F.S.A., and paying into the registry of the trial court the amounts of money for taxes which could have been lawfully assessed for 1962 as viewed by the plaintiffs. Such amendment to the complaint shall be filed and payment into court of such tax amounts on and for the several parcels of property involved shall be made within 30 days after issuance of the mandate in this case; otherwise the dismissal order appealed from shall stand affirmed.
It is so ordered.

. Section 196.01, Fla.Stat., F.S.A. “Chancery jurisdiction in taco matters Courts of chancery in this state shall have jurisdiction in all cases involving the legality of any tax, assessment or toll, and shall inquire into and determine the legality, equality and validity of the same under the constitution and laws of Florida, and shall render decrees setting aside such tax, assessment or toll, or any part of the same, that shall appear to be contrary to law, provided that the complainant shall in every case tender into court and file with the complaint the full amount of any such tax, assessment or toll which he shall admit to be legal and due by him, or file with the complaint a receipt showing payment of the same prior to the institution of the suit.”

. The suit was brought by 42 taxpayers listing 200 parcels of land, and showed the assessments thereon for 1961 and for 1962, the latter in most eases being twice the amount of the former. The aggregate assessments on said parcels for 1961 were approximately $800,000, and for 1962 were approximately $2,000,000.

. Dewhurst v. City of St. Augustine, (1926) 91 Fla. 314, 107 So. 689; Folsom v. Bank of Greenwood, (1929) 97 Fla. 426, 120 So. 317; City of Tampa v. Wiley, (1939) 137 Fla. 126, 188 So. 134.

. Here, before any trial has been had on the merits, a year has elapsed with no tax paid for 1962 on property valued by the assessor at $2,000,000. The complaint was filed November 8, 1962, dismissed February 6, 1963, and appealed March 8. The appeal was perfected in August, and argued October 22. No application was made to advance the appeal.

. German National Bank v. Kimball, 103 U.S. 732, 26 L.Ed. 469.