In the Matter of FRED M. BARRETT et al., Petitioners, against
HOWARD M. MUNGER et al., Constituting the Board of Assessors
of the Town of Cazenovia, Madison County, Respondents.

Supreme Court, Special Term, Madison County, April 22, 1952.

*Joe Schapiro* for Fred M. Barrett and others, petitioners.

*Theodore Cross* for Grace Gibson and others, petitioners.

*Irving H. Lessen* for William Lessen and others, petitioners.

*William D. Kiley* and *William J. Doyle* for respondents.

ZELLER, J.   Early in 1951, the town board of the Town of Cazenovia engaged the services of the J. M. Cleminshaw Company of Cleveland, Ohio (hereinafter referred to as " Cleminshaw ") " to assist the Board of Assessors to make a complete revaluation of all taxable real property " within the town. Thereafter, Cleminshaw inspected each parcel of real property, gathered data concerning the age, type of construction, size and condition of each building and the improvements therein, investigated the amount, kind and quality of the land embraced within each parcel and placed all the information upon an appraisal record card bearing the name of the owner of the property. Each card also contained Cleminshaw's determination of the value of the property.   The cards were then delivered to the board of assessors.

The board of assessors consists of three members. During 1951, one of the members, Mr. Hunt, was ill and took little part in the board's activities.   The other members were Mr. Munger, and Mr. Winchell, who have been lifelong residents of the town and who had served in previous years.   Mr. Winchell and Mr. Munger who were generally familiar with the 1,500 parcels of real property in the town examined the cards, compared the valuations given on certain cards with valuations on other cards representing properties which they judged to be similar and nearly equal in worth, weighed the valuations given with their knowledge of the properties, and determined that the valuations fixed by Cleminshaw were fair and just and adopted them as proposed assessments.

To comply with section 27 of the Tax Law and to have adequate time to care for the expected large number of objectors, the board of assessors set aside a five-day period for the hearing of complaints.   Mr. Enslen of Freemont, Ohio, a representative of Cleminshaw was present, and interviewed many of the taxpayers who appeared.   He sat behind a table and had available the appraisal record cards.   Mr. Munger and Mr. Winchell circulated among the taxpayers, explained some of the data on the appraisal cards to them and advised some of them to

wait in turn to see Mr. Enslen for additional explanations of the data on the cards. Mr. Munger and Mr. Winchell consistently refused to discuss the question of valuation with taxpayers. Each repeatedly stated, in substance, " We cannot talk about the assessments ", " They are out of our hands ", " There is nothing we can do ", " It is all in Cleminshaw's hands ". Mr. Winchell told an attorney representing many of the petitioners, " We can't make any changes. If we do, Cleminshaw does not have to defend us in any law-suits ". When tendered notices of protest by another attorney, Mr. Munger said "File them with Cleminshaw ".

Upon conclusion of the grievance period, the assessors, after consulation with Mr. Enslen, changed twelve or fifteen assessments, completed the roll, verified it and filed it.

Eighty-four taxpayers have pending proceedings to review their assessments pursuant to article 13 of the Tax Law. Each taxpayer alleges that his assessment is unequal because made at a higher proportionate value than assessments of other properties on the same tax roll. In addition some of the petitioning taxpayers claim that their assessments are illegal alleging that such assessments were not fixed by the assessors but by Cleminshaw and that the assessors refused to hear and determine their complaints on grievance day. The question of the illegality of the assessments was severed for the purpose of trial, testimony presented thereon and is the subject of this decision.

A municipality may engage the services of a person or corporation to appraise the value of real property to assist assessors in the assessment of such real property. (Village Law, § 89, subd. 60-a; Town Law, § 102, subd. 5; *Queens Park Gardens* v. *County of Nassau,* 255 App. Div. 625, affd. 280 N. Y. 789.) However, the duty of fixing assessments rests exclusively upon assessors and cannot be delegated to any person or corporation. Aid and assistance may be rendered, appraisals may be furnished, but the actual determinations of the assessments must be made by duly elected officials, the assessors. The method to be followed by assessors in arriving at such determinations is not prescribed by the Tax Law and, insofar as the procedural aspect is concerned, the manner of arriving at such determinations is within the control of assessors.

The system employed by the assessors in the instant case has been mentioned previously. The assessors relied upon the appraisals furnished by Cleminshaw but reserved unto themselves final judgment as to the assessments. It cannot be held

that they delegated their authority to Cleminshaw or that they did not actually fix the assessments.

The Tax Law does prescribe that on a specified day assessors shall meet to hear and determine all complaints in relation to the assessments made by them. (Tax Law, § 27.) On that day a taxpayer has the right to draw to the attention of the assessors such facts as he deems pertinent to his contention that his assessment should be corrected. (*People ex rel. Bridgeport Sav. Bank* v. *Feitner,* 191 N. Y. 88, 100.) The extent to which the assessors will permit the taxpayer to proceed with the presentation of his contention is solely within their discretion. But assessors have no discretion to determine that they will not consider a taxpayer's contention. After they have learned of it, they may refuse to credit it with any weight. But consider it they must — and that with an open mind. If they do consider the taxpayer's contention then from a procedural standpoint they have fulfilled their duty. If they have previously determined to shut their minds to any contention, however reasonable, then they do not comply with the legislative injunction " to hear and determine all complaints ".

The assessors in this case did not fulfill the legislative injunction. They repeatedly expressed the view that they could not change any assessment. Such interviews as they granted to taxpayers were to explain the Cleminshaw system and the data on the appraisal record cards rather than to hear and determine complaints relating to assessments. Cleminshaw usurped the entire grievance period and used it to explain its system of appraising properties. In case of farm properties Cleminshaw could not even undertake to justify its valuations because the representative present at the hearing had not seen those properties. True, Cleminshaw did make certain corrections during this period. But to have complaints determined by a nonresident representing an organization with its principal offices out of this State is too far removed from the procedure contemplated by the statutes and customs of this State to allow it to be sanctioned.

Because of the attitude and conduct of the assessors and because of Cleminshaw's domination of the grievance period it is held that the assessors failed to hear and determine complaints in the manner contemplated by law. The assessments of the taxpayers complaining of this defect should be declared illegal and reassessments should be made as required by law.