134 So.2d 816 (1961)
HARBOND, INC., Appellant,
v.
E. Van ANDERSON, as Tax Collector of Citrus County, Florida, and Ray E. Green, as Comptroller of the State of Florida, Appellees.
No. 2160.
District Court of Appeal of Florida. Second District.
November 22, 1961.
Fisher, Sauls, Fisher, Anderson & Adcock, St. Petersburg, for appellant.
Scofield, Bradshaw & Roberts, Inverness, for appellees.
KANNER, Acting Chief Judge.
Harbond, Inc., a corporation owning approximately 17,000 acres of land in Citrus *817 County, Florida, filed suit under Chapter 196, Florida Statutes, F.S.A., against the tax collector of that county and the comptroller of the State of Florida, seeking to enjoin collection of 1959 taxes assessed against a large portion of those lands. Grounds advanced were that these lands had been assessed at more than their actual cash value, that for tax purposes their valuation had been set at a greater figure than had been placed on similar lands in Citrus County, and that the assessments were unreasonably excessive and unequal. The prayer was that the trial court determine the portion of the assessment which was unequal and the portion which was legal and the amount plaintiff legally should be required to pay and that, upon payment of the required sum, the court cancel those portions found by it to be illegal. The trial judge entered final decree, finding that plaintiff had failed to establish the allegations and dismissing the cause.
Plaintiff owns and operates a ranch and ranching properties upon the area in which are located the lands in question. The controversy began to crystallize when in 1959 plaintiff returned its property for taxation, listing values from $5 to $15 per acre upon respective parcels of land, whereupon the tax assessor refused to accept those valuations and instead assessed them on the 1959 tax roll at values ranging from $20 to $30 per acre. Plaintiff then appeared before the board of county commissioners sitting as an equalization board and protested. The board, refusing to reduce the assessments, approved them.
Plaintiff's Citrus County lands lie, in the main, along and between Crystal River on the south and the Withlacoochee River on the north, with U.S. Highway 19 bordering on the east and the Gulf of Mexico on the west. Not all those lands are involved in this controversy. For purposes of the trial, plaintiff in its complaint divided the property which is the subject of the dispute into five classifications.
Under the first category, designated as marsh lands, there are approximately 5,240 acres located along the Gulf of Mexico. Plaintiff's witness testified that these lands were assessed at $20 to $30 per acre in 1958 and 1959, that other similar lands were assessed at $10 to $15 per acre, and that they have an actual cash value of $5 per acre.
Classification number two includes approximately 3,635 acres of low "wet hammock lands," characterized as being usable for cattle grazing only in the winter months. Assessed at $20 per acre in 1958 and 1959, the lands were stated to have an actual cash value of not more than $10 per acre.
Under class three are placed "very rocky lands with scattering pines," consisting of some 3,920 acres. These were assessed at $20 per acre in 1958 and 1959, although plaintiff claims their actual cash value to be not more than $15 per acre.
Under class four were listed some 3180 acres of "pine and palmetto on rocky lands." They were assessed at $20 per acre in 1958 and 1959, although plaintiff claims their actual cash value is not more than $15 per acre.
Classified in the fifth category are around 40 acres upon which is located a 3-acre borrow pit and a road right of way. The 40-acre tract was assessed at $4,000 with plaintiff asserting the true cash value to be $37 per acre, not counting the borrow pit nor road right of way and citing similar parcels of like value as being assessed much lower.
As to the lands thus described, plaintiff, during trial, offered no testimony except that of its president. Introduced into evidence were aerial photographs of the United States Department of Agriculture and others taken by a commercial photographer at the behest of plaintiff's president, snapshots of portions of the lands which that witness himself had taken, United States Geological Survey Maps covering plaintiff's property, and portions of the 1959 tax rolls. *818 Plaintiff's witness, as president of the corporation, had for many years been connected with its management. His opinion as to the value of any lands in Citrus County was based mainly upon ownership by plaintiff corporation of the lands involved and his familiarity with them as its president, together with his experience as a cattleman and his experience in developing some 240 acres of land in Pinellas County, where he resides. Certain evidence was offered by plaintiff, purporting to show that other Citrus County lands said by that witness to be of greater value than those of plaintiff were assessed at a lower figure. Upon objection of defendant, that evidence was rejected by the court, and proffer of it was also declined.
Testimony of defendant, in the main, was that given by the tax assessor of Citrus County for the past 16 years, together with supporting testimony of two other witnesses, one a registered real estate broker and one a registered land surveyor. The tax assessor's testimony was based upon his familiarity for several decades with the lands involved through several hundred trips upon them for hunting, fishing, gathering oysters, and for purposes of tax assessment. He stated that he examines the public records regularly and often in order to ascertain purchase prices paid upon sales of land throughout the county and that, in placing the assessed 1959 valuation for plaintiff's lands, he had done so upon the basis of what in his judgment and opinion was the actual cash value of the property. Evidence was offered to demonstrate that all lands immediately adjacent to those of plaintiff were assessed at either the same or at an even higher value and that certain sales of lands in the vicinity of those of plaintiff were made for figures several times the assessed value of plaintiff's property.
In his final decree, the chancellor found that plaintiff corporation had failed to carry the requisite burden of proof by evidence sufficient to establish that the assessed value is in fact any greater than the actual cash value of the lands and found, further, that plaintiff failed to establish by a preponderance of the evidence that its lands are assessed at a higher value than similar lands. Stating that the only testimony with reference to the value of the subject lands was given by plaintiff's president, the court said that none was offered by plaintiff to show recent sales of land in the immediate vicinity of those of plaintiff and that its president stated he had made no effort to check these. The court then made reference to evidence of the tax assessor on behalf of defendant, showing that witness's long-standing familiarity with the property involved, assessment of all lands immediately adjoining those of plaintiff at the same or higher value, sales of parcels adjacent to or in the vicinity of plaintiff's lands for several times the assessed valuation of those lands, and his testimony that the actual value of plaintiff's property was at the figure assessed. With reference to assessed values of lands which plaintiff's president described as being similar to those classified under number one and assessed at $10 per acre in 1959, the trial judge specifically found that those, though similar marsh lands, were located some 4 or 5 miles from the Gulf of Mexico and 6 or 7 miles south of those of plaintiff and that no part of them extends to the Gulf of Mexico. Additionally, he found as to assessed values offered in evidence for lands plaintiff asserted were similar to its wet hammock lands in category two, assessed at $10 per acre, that those lands were located some 12 to 15 miles south of those of plaintiff's in the center of a similar hammock which, however, was 2 miles wide, whereas plaintiff's hammock is only about one-half mile wide. As to lands in classification five, the court stated that testimony of plaintiff's president indicated that the similarly located lands testified to were actually assessed at a higher value than the lands of plaintiff in that particular category.
The trial judge, in the opinion portion of his decree, observed that he took judicial knowledge of the fact that the State of Florida had recently sold wholly submerged *819 lands at more than twelve times the assessed value of the lands in question and had rented others at yearly rental figures in excess of the total assessed value of the lands involved. His purpose in so doing, as expressed by him in his decree, was not to indicate the value of the property in issue but to show that the mere fact that lands on their face are apparently worthless or have no practical use is not conclusive of their actual value.
On the appeal, plaintiff contends (1) that in a tax assessment suit brought under Chapter 196, Florida Statutes, challenging the validity of the 1959 Citrus County assessment on plaintiff's lands, the trial judge should have admitted evidence that the tax assessor had assessed other more valuable lands at a lesser figure than was required of plaintiff for his property, and (2) that it was improper for the trial judge to take judicial knowledge of speculative values under inflationary land boom conditions in the suit brought to redetermine the assessed value of plaintiff's lands.
As to appeal point one, it appears that the evidence for which plaintiff argues consists of data gathered by means of an examination of the county tax rolls made by plaintiff's president, together with descriptions pertaining to the character and uses of certain lands in the county to which the data relate. Plaintiff, contending that the evidence should have been admitted, asserts it would have proved that lands in the county more valuable than those of plaintiff had been valued at a lesser figure by the assessor and states that, had the evidence been received and considered, it would have required decree for the plaintiff.
Defendant's position is that the proffered evidence concerned assessments upon remotely located parcels of land embracing a relatively small area of the county, with none of them fronting on any rivers or streams in Citrus County nor upon the Gulf of Mexico as is the case with plaintiff's lands, and with none of them being in the same general area as those of plaintiff. Additionally, defendant asserts that the only witness offered, plaintiff's president, was not qualified to testify as to the value of lands sought to be compared. The only basis for opinion testimony of the witness of any land in Citrus County, defendant says, was his official capacity with plaintiff corporation and his familiarity with the corporation's lands, together with his having developed and sold certain lands in Pinellas County. Defendant further states that plaintiff's witness was not familiar with the amount paid upon sales of any lands in Citrus County over the past few years, not having bought or sold any lands in the county for many years and not having examined any of the public records to ascertain purchase prices paid upon the sale of any lands in the county.
It may be said generally that for a witness to testify as to the value of realty he must have had an adequate opportunity to apprise himself of the realty's worth and should know the particular property to be valued and the value of land in the vicinity or of the same class. For a discussion of these principles, see 32 C.J.S. Evidence § 545, pp. 285, 299, 301-303, and 20 Am.Jur., Evidence, section 891, p. 749.
An owner, ordinarily, by reason of ownership, is qualified to testify to the value of his own property. A corporate officer may testify as to value of property of the corporation where, because of his management of its affairs and personal knowledge of the property, he is thereby qualified, as was plaintiff's witness here. 20 Am.Jur., Evidence, section 893, p. 751; 32 C.J.S. Evidence § 545(b) (2), p. 289; Jones on Evidence, Fifth Edition, Vol. 2, section 408, p. 766. However, the fact of ownership does not of itself qualify one to testify to value of other lands.
In the final analysis, it is axiomatic that the matter of whether or not a *820 witness is qualified to testify as to value of specified lands is a question which must be left in large part to the discretion of the trial court. Wigmore on Evidence, section 561, p. 641; 32 C.J.S. Evidence § 545, p. 305. The judgment of the chancellor was that the proffered evidence of plaintiff was not admissible. With this we agree.
From the City of Tampa v. Palmer case, 1925, 89 Fla. 514, 105 So. 115, it is seen that the making of valuations upon property for tax purposes is an administrative act involving exercise of administrative discretion; and the good faith of tax officers and their official actions is presumed. When made by proper officers, the prima facie correctness of an assessment, to be overcome, must be affirmatively assailed by appropriate and sufficient allegations and proofs, to the exclusion of every reasonable hypothesis of legal assessment. See Folsom v. Bank of Greenwood, 1929, 97 Fla. 426, 120 So. 317; and West Virginia Hotel Corporation v. W.C. Foster Co., 1931, 101 Fla. 1147, 132 So. 842. Tax assessors are necessarily accorded a wide discretion in valuation of property for taxation purposes, and conflicting views frequently arise in the common effort to arrive at such a valuation. Courts will not ordinarily disturb an assessment made by a tax assessor or control his reasonable discretion in making an evaluation of property for assessment purposes. 31 Fla.Jur., Taxation, section 645, p. 525; Arundel Corporation v. Sproul, 1939, 136 Fla. 167, 186 So. 679.
In support of its claim of over-assessment, plaintiff cites the case of Schleman v. Connecticut General Life Ins. Co., 1942, 151 Fla. 96, 90 So.2d 197, wherein the Supreme Court held that an over-assessment of property to the extent of 300 percent would be grounds for a court of equity to grant relief to the taxpayer. The case of Burnett v. Neclar, Inc., 1940, 142 Fla. 145, 194 So. 324, has also been cited by plaintiff. There, the injunctive relief to the taxpayer was predicated upon excessive, discriminatory, and materially higher valuation of the property in question in proportion to its actual full value than that accorded realty generally in the county in proportion to its actual full value. A study of these cases, however, when considered in light of the evidence, demonstrates that they are not controlling here.
Having concluded that the chancellor did not commit reversible error through sustaining of defendant's objection to the proffered evidence, this court considers now plaintiff's appeal point two relating to the "judicial knowledge" to which the chancellor gave expression in the body of his opinion. As to this, the paragraph in which the reference is made clearly states that this was done "* * * not for the purpose of indicating the value of the lands in question, but for the purpose of showing that the mere fact that lands appearing on their face to be worthless or to have no practical use, is not conclusive of the actual value of such lands." It is this court's belief, from an analysis of the quoted material considered within the total context of the decree, that the statement did not enter into the determination arrived at by the chancellor in the decretal portion of his opinion.
The testimony and the evidence were placed before the chancellor as arbiter of the disputed facts. He found that there was shown no fraud on the part of the tax assessor, no willful or purposeful attempt by him to grossly over-evaluate plaintiff's lands, and no evidence from which it could be determined that the tax assessor had abused his discretion in placing the assessed values on the property in question. This court finds no basis for disturbing the chancellor's decree.
Affirmed.
WHITE, J., and SANDLER, HARRY N., Associate Judge, concur.