DREW, Justice.
Appeal has been taken from a final summary decree of the Circuit Court for Pinellas County [1] directly passing upon and sustaining the validity of Section 193.111, Florida Statutes, F.S.A.
The statute provides in part: “The boards of county commissioners of each of the several counties of the state, be, and they are hereby authorized and empowered to cause to be made by a company or board of appraisers to be selected by the board of county commissioners, an appraisement of all property in such county. * * * The original of said appraisement shall be deposited with the tax assessor of such county and a duplicate thereof shall be deposited in the office of the board of county commissioners.” The appellee County, by contract pursuant to this statute, obtained the services of the Hunnicutt corporation, upon specified terms, to appraise all taxable real property within the county boundaries for the information, guidance and use of the county tax assessor in preparing the Pinellas County tax roll. Bill for injunction against performance of the contract was subsequently filed by the appellant taxpayer upon several grounds, including that of constitutional transgression hereinafter detailed.
In the resulting decree the court found, upon the pleadings, affidavits and depositions filed in the cause, that the contract was a valid obligation of the parties and did not conflict with Section 193.11[2] or 193.111, Florida Statutes, nor with Chapter 26464, Laws of Florida, Extraordinary Session of 1949, which authorized and controlled a reassessment at that time of taxable property within Pinellas County. The court also found that Section 193.111, supra, does not *99 constitute an unlawful delegation of any of the powers and authority of the county, the County Tax Assessor, or the County Clerk to the Hunnicutt corporation in contravention of Article VIII, Section 20, or other provision of the Florida Constitution.
We conclude that the decree must be affirmed. The requirement of Article VIII, Section 20 is that the Pinellas County Tax Assessor “shall assess all property for all * * * taxes to be levied in the county” by state and local authorities. The provisions of Section 193.111, and the more specific terms of the contract here involved, do not contravene directly or indirectly the constitutional mandate.
The contract required, in substance, the submission of evaluations together with substantiating data,[3] representation at meetings for purposes of explanation and technical assistance, and conduct of a limited program of public information and understanding. We find no authority which would condemn the rendition of such services to public officials charged with the performance of governmental functions.[4] In the exercise of all governmental power it is obviously the ultimate judgment or decision which an officer is required to make personally.[5] The statute, pleadings and exhibits [6] involved in this cause are conclusive that such power has not been surrendered or removed from the assessor in favor of either the corporate appraisers or supervising county officials nor could it be. In State ex rel. Glynn v. McNayr [7] we specifically held that such appraisals “[were] not binding on the tax assessor although it could properly be used by him as a guide.”
Nor is there merit to the contention that Chapter 26464, supra, prevents Pinellas County’s utilization of the subsequent general law, which on its face has a statewide application. The special act is not in terms exclusive or inconsistent with Sec. 193.111 and cannot therefore serve as the basis for application of the rule of statutory construc *100 tion under which special laws take precedence over general provisions on identical subject matter.
The remaining points urged by appellant have been fully considered and resolved in favor of the adjudication below.
Affirmed.
ROBERTS, C. J., and TERRELL, THOMAS, THORNAL, O’CONNELL and CALDWELL, JJ., concur.

. Art. V, Sec. 4(2), Florida Constitution, F.S.A.

. Containing the general provision that county tax assessors, with appointed assistants, shall make assessments.

. The contract terms, Sec. I, paragraph A, are that “the Corporation shall furnish an adequate quantity of real property records cards of custom design to become the permanent assessment records of the County. The cards shall be designed in conjunction with the Asses-gor * * * to record the information necessary for a complete and modern property record card system, and shall include space for perimeter drawing of buildings, building construction data, building valuation computations, land valuation computations, property legal description, ownership record, and other pertinent data.” Methods of appraisement and details of data to be included were thereafter set forth, together with provision for delivery of the record cards, land assessment maps, county assessment manuals, and corporation building rate calculators and building rate slide rules, to the Assessor upon completion of the work.

. Whether or not specific statutory authorization exists, the propriety of contract appraisals in aid of tax assessments by public officials is widely recognized: Queens Park Gardens, Inc. v. Nassau County, 255 App.Div. 625. 8 N.Y.S.2d 332; Queens Park Gardens, Inc. v. Nassau County, 280 N.Y. 789, 21 N.E.2d 619-620; Barrett v. Hunger, 201 Misc. 985, 115 N.Y.S.2d 708; Conroy v. City of Battle Creek (1946) 314 Mich. 210, 22 N.W.2d 275; Tietjen v. Mayor and Alderman of Savannah (1925) 161 Ga. 125, 129 S.E. 653; Stocklan v, Brackett (1948) 95 N.H. 227, 61 A.2d 140; Hutchins v. Chandler (1952) 209 Ga. 415, 73 S.E.2d 191; Brennan v. Black, 34 Del.Ch. 380, 104 A.2d 777; J. Ehrlich Realty Co. v. City of Dover (Del.Ch.) 124 A.2d 732; Whitney v. City of Terrell (Tex.Civ.App., 1955) 278 S.W.2d 909; Alexander v. Mayor and Bd. of Aldermen (1953) 219 Miss. 78, 68 So.2d 434.

. Cf. Hoyt v. State, Fla.1960, 119 So.2d 691, 695, affirmed 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118.

. Testimony of the appellee Assessor is clear and unequivocal to the effect that the contract was executed with his knowledge and consent, but that he accepted the corporate appraisals only to “use those values to help me decide what is the proper assessed value to establish for this year’s tax roll.”

. Fla., 133 So.2d 312, 317.