155 So.2d 742 (1963)
V.H. OSBORN, sometimes known as Virgil H. Osborn, Appellant,
v.
Mrs. E.B. YEAGER, as Tax Collector for Charlotte County, Florida, and Ray E. Green, as Comptroller of the State of Florida, Appellees.
No. 3596.
District Court of Appeal of Florida. Second District.
August 16, 1963.
Rehearing Denied August 29, 1963.
E.D. Treadwell, Jr., of Treadwell & Treadwell, Arcadia, for appellant.
Leroy Hill, Punta Gorda, for appellees.
SHANNON, Judge.
The appellant, plaintiff below, filed his complaint in the Circuit Court for Charlotte County, Florida, naming as defendants the Tax Collector of Charlotte County, Florida, and Ray E. Green, as Comptroller of the State of Florida. In the complaint he alleged that certain parcels of land were over-assessed for the year 1961, and prayed that the collection of taxes be enjoined. The defendants answered, putting in issue the allegations in the complaint, and after final hearing a decree was entered in favor of defendants. It is from this decree, as amended, that the plaintiff appeals.
*743 The appellant poses two questions to be answered by this court. The first question is: "Within the purview of Article 9, Sections 1 and 3, of the Constitution of Florida and 193.06 and 193.22, Florida Statutes, commanding the assessment of real property on the basis of a just valuation and its full cash value, is an assessment valid which is based upon an acknowledged ignorance of the true cash value and is admittedly geared to speculative investments in other parts of the county?" The second question is: "Where a taxpayer alleges gross over-assessment and substantiates his allegations with proof, may he prevail without the additional burden of showing discrimination against him?" However, both of these questions proceed upon a premise which is untenable, and the real question is, as we see it  Did the tax assessor assess the real estate herein in accordance with the Constitution of Florida and the statutes pertaining to assessment? From the evidence in the record the trial court found that the assessments were validly made in accordance with those laws, and with this finding we agree. There is some testimony offered on behalf of the plaintiff which would seem to indicate that the tax assessor did not use a valid procedure to assess these lands, but the overwhelming weight of the testimony is to the effect that he did. Charlotte County had employed Hunnicutt and Associates, an appraisal firm, to re-appraise property for the year 1961, but this fact is no deterrent to the actual valid assessment made by the tax assessor. See Freeze v. County of Pinellas, Fla. 1962, 146 So.2d 97. He used the advice of Hunnicutt, but the actual figures on assessment, whether they agreed with Hunnicutt or not, were his own. There is testimony in the record that shows conclusively that he did not rely upon Hunnicutt in arriving at his figures. It is also true that on some parcels of the plaintiff's land the assessments seem unusually high, but when the record is studied we can see how the tax assessor would be justified in making the assessments as he did.
Considerable leeway and discretion is allowed a tax assessor in his arrival at the "full cash value" of taxable property. In the much cited case of Schleman v. Connecticut General Life Insurance Company, 1942, 151 Fla. 96, 9 So.2d 197, our Supreme Court stated:
"We are fully aware of the difficulty of fixing with certainty the full cash value of property and the great variance in values set by persons of like experience and judgment, all making estimates conscientiously. Because of this inexactitude considerable leeway should be granted the official whose duty it is to make assessments and because of his position his valuations should not be easily disturbed * *."
Attempts have been made, of course, to define the proper methods of assessing full cash value. But a general set of rules will simply not suffice for each particular situation and each particular piece of property. Nevertheless, a helpful discussion on this subject is set forth in 31 Fla.Jur., Taxation, Sec. 265, as follows:
"For purposes of taxation, the value of property is determined by taking into account all favorable and unfavorable circumstances that would control the admeasurement of its present market value were it placed on the market to be sold by the owner. If similar property is commonly bought and sold, the price which it brings is the best test of the value. But where an established market is nonexistent, the process of valuation must comprehend not only one but all of the influencing factors going to make up the intrinsic value. Formulae may be authorized as a detail of the method of arriving at the ultimate conclusion as to value, but valuation for tax purposes does not depend on matters of formulae alone."
See also, Hillsborough County v. Knight & Wall Co., 1943, 153 Fla. 346, 14 So.2d 703; City of Tampa v. Colgan, 1935, 121 Fla. 218, *744 163 So. 577; and (1949-1950) Atty.Gen. Rep. 233.
In the case of Hillsborough County v. Knight & Wall Co., supra, our Supreme Court discusses the various elements going into a determination of the full cash value, and notes that "[t]he scarcity of opinions to guide us is remarkable, not that the subject has seldom been considered but because in most controversies reaching the courts of this country statutes were involved which directed how value should be determined."
Recognizing the difficulty entailed in such a situation, then, and realizing that different criteria can be used for finding the value of different parcels of land, we note with approval the steps which the assessor herein took, as gleaned from the record and set forth in the appellees' brief:
"A. The full cash value of taxable real estate is determined by the Assessor on the basis of numerous comparable sales, involving similar real estate, similarly located, with the same physical characteristics, where such sales are consum[m]ated within one (1) or two (2) years of the date of the assessment.
"B. Full cash value is determined solely by market value, which is based upon similar sales, and there is no other available criteria for the assessor, such as income capitalization, or replacement cost basis.
"C. Full cash value is determined by the Assessor using similar sales, where adjustment is made for the location of the property, the physical characteristics of the property, the size of the tract, and all other pertinent factors.
"D. Full cash value is determined by arriving at a gross market value and deducting therefrom estimated expenses of sale, such as commissions, abstracting, etc.
"E. The evidence is undisputed that land of similar characteristics, similarly situated, and comparable in every respect to the subject lands, was the subject of numerous sales at values far in excess of the value that the Assessor placed on the property now in controversy.
"F. There is absolutely no evidence to indicate that other lands in the County, of similar character to the Appellant's, were assessed for less than that assessed against Appellant's land."
Harbond, Inc. v. Anderson, Fla.App. 1961, 134 So.2d 816, decided by our court, contains a good review of most of the Florida cases dealing with questions such as ours, and would seem to lend approval to the foregoing. In arriving at "full cash value," the tax assessor apparently employed the proper standards to be used insofar as the record is concerned. The above criteria show a thorough analysis of the property values, and the record supports the fact that the assessor did in fact employ these various methods of assessment.
It might be noted that even if the proof were not so clear as it is, the appellant would have no little difficulty in avoiding the assessor's valuations, due to the considerable discretion accorded the assessor. As Mr. Justice Thornal stated in State ex rel. Glynn v. McNayr, Fla. 1961, 133 So.2d 312:
"In this regard, it has been held that so-called `full cash value' does not lend itself to absolute certainty. In applying the requirement this Court has recognized that the local tax assessor must necessarily be accorded a reasonable leeway in the exercise of judgment as to valuations. It has been held that the judgment of the tax assessor will not be disturbed unless it can be demonstrated that he has acted arbitrarily and capriciously. * * *"
The case law is consistent that the assessor will be accorded such discretion, some cases *745 going so far as to say that an assessment must be fraudulent and illegal before it will be disturbed. See Seaboard Air Line R. Co. v. Gay, Fla. 1954, 74 So.2d 569; Poland v. City of Pahokee, 1946, 157 Fla. 179, 25 So.2d 271; The Arundel Corp v. Sproul, 1939, 136 Fla. 167, 186 So. 679; and Buchanan v. City of Tampa, 1938, 134 Fla. 618, 184 So. 104.
Upon due consideration of the record and briefs in this cause, we cannot see that the assessor attached either excessive or discriminatory valuations to the appellant's property, and his valuations must stand.
We therefore find that the learned trial judge committed no error, and his decision is affirmed.
Affirmed
SMITH, C.J., and FUSSELL, CARROLL W., Associate Judge, concur.