AERONAUTICAL COMMUNICATIONS EQUIPMENT, Inc. v.
TAX ASSESSOR, et al.
No. 67-17286.

Circuit Court, Dade County.

April 8, 1968.

Weintraub & Weintraub, Miami, for plaintiff.

Thomas C. Britton, County Attorney, John G. Fletcher, Assistant County Attorney, for defendants.

JOHN J. KEHOE, Circuit Judge.

This cause came on for non-jury trial on the first day of April, 1968. Considerable testimony was presented on behalf of all parties, together with numerous exhibits and certain stipulations. The issue before this court is whether the tangible personal property tax assessment valuation on the property of plaintiff, for the tax year 1967, is arbitrary, unreasonable and exceeds the fair market value of said property.

§192.05, Florida Statutes, as it existed on January 1, 1967, required the tax assessor to value property known as stock in trade (or inventory), as a special category of personal property, on the basis of average valuation over the twelve month period immediately preceding January 1, 1967. The major portion of the property with which we are here concerned consists of such stock in trade or inventory; that is "chattels which the merchant acquires and puts into his place of business for use in his trade or for the purpose of sale." Warren Co. v. Howell, 3 So.2d 167 (Fla., 1941). The stock in trade (or inventory) with which we are here concerned consists chiefly of work in process of the plaintiff corporation, which corporation produces electronic equipment, from raw materials for sale pursuant to prior orders. The tax assessor followed the state comptroller's directions in assessing the raw materials and work in process as stock in trade. (Florida Tax Assessor's Guide, p. 108, citing Opinion of the Attorney General 065-57 and Verney Corporation v. Peterborough, 188 A.2d 50.)

The method, or hypothesis, that the tax assessor used in valuing the stock in trade was clearly set forth by the testimony, as the cost approach. The assessor used the plaintiff corporation's 1965 federal income tax return (plaintiff's fiscal year ending October 31, 1966) and a balance sheet submitted — with unqualified certification — by plaintiff's certified public accountants. These documents set forth the plaintiff's invoice costs and overhead for the beginning and ending months of its fiscal year, as well as the cost minus depreciation figures on its furniture, fixtures and equipment.

The assessor computed the average monthly stock in trade (or inventory) value for plaintiff's fiscal year, and computed the value of the other personal property on a cost minus depreciation basis from these documents.

It is plaintiff's contention that this method of assessment arrived at an arbitrary "book value" for the property, which had no relation to its "actual value". Plaintiff presented the testimony of expert witnesses to attempt to prove the "actual value" of the property.

Plaintiff's first witness as to "actual value" readily admitted that there was no going market for the type of items produced by plaintiff. He also stated that the items had only a "junk" value. Testimony of the president of plaintiff corporation, however, revealed that no more than two per cent of his stock in trade had been junked. It may well be that there is no general market for the products, but 98 per cent of the items were sold to buyers willing to pay a price which brought a profit to the plaintiff. The testimony of this first witness can be given only little weight regarding the value of the subject property, as he valued exhibit 14 (an example of work in process) at no more than "fifteen to twenty" dollars, whereas the president of the plaintiff corporation had testified previously that exhibit 14 consisted of $200 worth of component parts and, assembled as it was, was worth (or would sell for) $600.

The testimony of plaintiff's second expert valuation witness was stricken by this court as the date of his appraisal was too remote from the valuation dates with which the court must concern itself. Culbertson v. State Road Department, 165 So.2d 255 (Fla. App., 1964).

Plaintiff also presented the testimony of Dr. J. Everett Royer, chairman of the accounting department of the University of Miami, who testified as to certain accounting matters, as an expert. Dr. Royer stated, inter alia, that the concept of "cost" includes invoice cost, applied labor, and overhead (sometimes referred to as "factory burden"). He testified that figures used as "inventory value" in federal income tax returns may or may not be the fair market value of the items of inventory, but that such may represent the "cost" of the inventory. This presents no difficulty in the instant litigation as the balance sheet submitted by plaintiff's certified public accountant clearly states the inventory value to be "lower of cost or market", and these figures tie into the federal income tax return of plaintiff for its fiscal year 1966. The said federal return also ties directly into the books of accounts and general ledgers of the plaintiff, as revealed by the testimony of one of defendants' certified public accountants, Mr. William J. Scarola, Jr., who had examined said books and ledgers.

This court heard considerable testimony from other witnesses. including various assistants to the tax assessor, including Mr. A. H. Blake, Jr., who used exhibit B (for the defendants), consisting of plaintiff's 1966 federal income tax return, to demonstrate that the tax assessment was also supported by later figures of plaintiff which included the months of November and December, 1966. Thus the assessment was supported by testimony as to all twelve months preceding January 1, 1967.

Plaintiff's burden of proof in challenging its tax assessment is clearly set forth in Folsom v. Bank of Greenwood, 97 Fla. 426, 120 So. 317 (1929), as more recently re-affirmed in Harbond, Inc. v. Anderson, 134 So.2d 816 (Fla. App., 1961). That is —

> "The prima facie correctness of an assessment when made by the proper officers must be affirmatively overcome by appropriate and sufficient allegations and proofs excluding every reasonable hypothesis of legal assessment."

Basically these hypotheses are set forth, in relation to all property, in McNayr v. Claughton, 198 So.2d 366 (Fla. App., 1967) as —

> ". . . (1) the cost approach; (2) the comparable sales and (3) the income or economic approach."

These three approaches are the hypotheses of assessment referred to in *Folsom* and *Harbond*, supra.

Plaintiff must therefore show that the assessment cannot be supported by any of these methods of arriving at the property's fair market value, or must show the methods to be unreasonable, thus not applicable.

The income or economic approach is applicable to tangible personal property (see the dissenting opinion of Justice Adams, citing the lower court's opinion which had been affirmed, in Kussrow v. Pitney-Bowes Postage Meter Co., 18 So.2d 5 (Fla., 1944). Therein the (affirmed) lower court decree determined tangible personal property value by considering, inter alia, net earning power — rental monies.) However, no rental property is involved herein and this court rejects this method of assessment as being inapplicable to plaintiff's stock in trade.

The comparable sales approach is also found to be inapplicable herein as plaintiff's first expert on valuation testified that there was no going market for the products — thus there were no comparable sales. Comparable sales would have been the best method of valuation. As stated in Osborn v. Yeager, 155 So.2d 742 (Fla. App., 1963) —

> "If similar property is commonly bought and sold, the price which it brings is the best test of value."

This applies to tangible personal property. Hillsborough County v. Knight & Wall Co., 14 So.2d 703 (Fla., 1943).

We therefore arrive at the conclusion that the only reasonable hypothesis of assessment in the instant litigation is that of cost. As was held in Hillsborough County v. Knight & Wall Co., supra, where there is no established market the assessor must consider other factors . . .

> ". . . Important among them was the method employed in arriving at the value of each item. It was valued at the cost of replacing it in the market or at the original purchase price, whichever was more advantageous to the merchant. This seems to us a means, as nearly accurate as possible, of fixing its full cash value."

In the instant case the situation differs in that the plaintiff's stock in trade consists of work in process, the value of which (cost of which) is increased as it is processed, as was testified to by the said Dr. Royer. The original purchase price (invoice price) thus is not the fair market value of the inventory herein.

Additionally, the original purchase price is only one of the factors regarding the fair market value of stock in trade as to the year 1967, as §192.05, Florida Statutes, sets forth various criteria, only one of which is the invoice cost. Another criterion is "the condition of the goods, including depreciation." Thus *appreciation* is one of the criteria, as it affects the condition of the goods. Labor applied to raw materials appreciates the value of the raw materials. This is particularly true in the instant litigation.

Thus the assessor used the only reasonable hypothesis of assessment. The plaintiff failed to show any errors in this valuation process. It failed to prove that the depreciation factor applied to the furniture, fixtures and equipment was unreasonable. Further, it failed to prove that the appreciation applied to the work in process inventory was unreasonable. Finally, it failed to prove any substantial obsolescence of the stock in trade. The burden of proof regarding the incorrectness of the assessor's application of depreciation, obsolescence (and appreciation) is on the plaintiff, not the defendants. Hillsborough County v. Knight & Wall Co., supra.

It is therefore ordered, adjudged and decreed — (1) That the tangible personal property assessment on plaintiff's property is reasonable, proper and valid. (2) That the complaint is dismissed and the relief requested by plaintiff is denied. (3) That the parties hereto bear their own costs.