34

## MIAMI HERALD PUBLISHING CO. v. TAX ASSESSOR, et al.
### No. 70-21703.
Circuit Court, Dade County.

November 20, 1972.

Darrey A. Davis of McCarthy, Steel, Hector & Davis, Miami, for the plaintiff.

Stuart L. Simon, County Attorney, for the defendants.

HENRY L. BALABAN, Circuit Judge.

*Final judgment:* This cause came on regularly for trial non jury upon the issues presented by the complaint and answer. The court heard the testimony, considered the evidentiary exhibits, and had the benefit of extensive briefs and arguments of counsel. The record has been reviewed and the applicable authorities independently researched.

Plaintiff challenges the validity of the assessed valuation for the tax year 1970 placed on the building owned and operated by plaintiff as a newspaper plant and office building, located at One Herald Plaza, Miami, and particularly described in the complaint. The assessment of the land upon which the subject building is situate is not in issue. Only the building assessment is contested.

Plaintiff's right to contest the building assessment only, without challenging the correctness of the land assessment, is not questioned. See Homer v. Hialeah Race Course, Inc., Fla. App. 1970, 249 So.2d 491; Metropolitan Dade County v. Tropical Park, Inc., Fla. App. 1970, 231 So.2d 243; and Haines v. Leonard L. Farber Company, Fla. App. 1967, 199 So.2d 311. In the instant case, it appears that the land and building were assessed separately. These separate assessments were made by different personnel in the tax assessor's office, and the two assessed valuations added to make up the total 1970 assessment. The assessment is reflected on the 1970 tax record as follows —

| | |
|---|---|
| Building assessment | $21,689,163 |
| Land assessment | 1,221,320 |
| Total assessment | $22,910,483 |

Plaintiff points out that the method of assessment employed by the tax assessor's office produced an assessed valuation for the 1970 tax year which increased the assessment by $6,826,383, or 43 percent over and above the assessed valuation certified on the tax rolls for prior years. However, it is recognized as the established rule that each year's assessment must be based on its own validity and not upon the assessment of any prior or subsequent year. Metropolitan Dade County v. Tropical Park, Inc., Fla. App. 1971, 251 So.2d 551, and cases cited therein. Accordingly, the increase in the 1970 assessed valuation has no relevance to the issues presented in this cause and warrants no consideration.

The threshold issue presented by the record in this cause involves determination of the validity and legality of the assessed valuation of $21,689,163 placed on the subject building for ad valorem tax purposes for the tax year 1970; that is, whether the assessment was made in accordance with the requirements of law.

The parties are not in disagreement as to the fundamental principles governing the assessment of real property for ad valorem tax purposes.

Article VII, §4, Florida Constitution 1968, provides in pertinent part that regulations shall be prescribed by general law which shall secure a just valuation of all property for ad valorem taxation. The implementing general law, §193.011, Florida Statutes, provides that in arriving at just valuation as required under Article VII, §4, Florida Constitution 1968, the tax assessor shall take into consideration the eight factors set forth therein. In the leading case, Walter v. Schuler, Fla. 1965, 176 So.2d 81, the Supreme Court determined that "just valuation" is legally synonymous with "fair market value" and may be established by the classic formula that it is the amount a "purchaser willing but not obligated to buy, would pay to one willing but not obligated to sell." The court further declared the requirement that the assessor shall assess property in such a manner as to secure a just valuation was not intended to give assessors an unbridled discretion in the performance of their duty to establish just valuation, but is intended to pin the assessors more firmly to the constitutional mandate. Although the assessor is given a wide discretion in the valuation of property for the purpose of taxation, this discretion is not unbridled. Valuations of property for taxation must be ascertained in the manner prescribed by law. Graham v. City of West Tampa, 71 Fla. 605, 71 So. 926. There can be no question that fair market value is, under the constitution and controlling decisions, the gauge by which all methods of valuation, statutory or otherwise, must be measured. St. Joe Paper Company v. Brown, Fla. 1969, 223 So.2d 311.

When the assessor proceeds in accordance with and substantially complies with the requirements of law designated to ascertain the valuation for the purpose of taxation, the assessment enjoys a presumption of correctness. However, if the steps required to be taken in making the valuation are not in fact and in good faith actually taken, and the valuation is shown to be essentially unjust or unequal abstractly or relatively, the assessments is invalid. The prima facie correctness of the assessment, to be overcome, must be affirmatively assailed by appropriate and sufficient allegations and proofs, to the exclusion of every reasonable hypothesis of legal assessment. Powell v. Kelly, Fla. 1969, 223 So.2d 305.

The presumption of the correctness of the assessment is predicated upon the principle that the making of valuations upon property for tax purposes is an administrative act involving the exercise of administrative discretion in arriving at just valuation by applying the guides prescribed by law. It follows that the taxing officials are presumed to have performed their duties and responsibilities according to law in good faith. Accordingly, the prima facie correctness of the assessment must be affirmatively overcome by appropriate allegations and proofs excluding every reasonable hypothesis of legal assessment. This burden of proof is imposed upon the taxpayer and property owner challenging a tax assessment. Homer v. Palm Corporation, Fla. App. 1971, 243 So.2d 641; Homer v. Dadeland Shopping Center, Inc., Fla. 1970, 229 So.2d 884; Keith Investments, Inc. v. James, Fla. App. 1969, 220 So.2d 695; and Harbond, Inc. v. Anderson, Fla. App. 1961, 134 So.2d 816.

The courts have recognized that there are three basic appraisal approaches or methods of arriving at the fair market value of real property — (1) the cost approach, (2) the comparable sales, and (3) the income or economic approach. McNayr v. Claughton, Fla. App. 1967, 198 So.2d 366. The dissenting opinion in St. Joe Paper Company v. Brown, Fla. 1969, 223 So.2d 311, at p. 314, provides the following definitions —

"(1) The cost approach which deals primarily with the estimated replacement cost of physical improvements less depreciation;

(2) the market or sales comparison approach, where the value is shown by recent sales of comparable property;

(3) the income or economic approach in which the appraiser estimates the amount of income the property is capable of producing under good, competent management and estimates what expenses would be necessary to produce this amount of income. From this he arrives at an estimate of the amount of net annual income which the property is capable of producing. The value the property will produce is determined by capitalization of the net income."

It has been stated that the cost approach involves estimating replacement or reproduction costs of improvements, reducing this cost by accrued depreciation and adding to this figure the value of the land arrived at by the market or sales comparison approach. *Criteria for Use of the Cost Approach,* 34 Appraisal Journal 23 (Jan. 1963).

In Aeronautical Communications Equipment, Inc. v. Metropolitan Dade County, Fla. App. 1969, 219 So.2d 101, at p. 104, the court declared that the above enumerated three approaches or

methods of valuation constitute the hypotheses of assessments referred to in the cited decisions, and that the contesting taxpayer and property owner must show that the assessment cannot be supported by any of these methods of arriving at the property's fair market value, or must show the methods to be unreasonable, thus not applicable.

Plaintiff specifically charges illegality in the assessing procedures employed by the assessor in arriving at his estimate of the 1970 assessed valuation of the subject building. It is alleged that he wilfully and deliberately disregarded the mandatory requirements of law governing ad valorem tax assessments; that he wholly failed and refused to recognize, follow or take into consideration the statutory factors required to be utilized by county tax assessors to secure just valuation of taxable property; that in making the assessment of the subject property he failed to follow or to utilize established assessing procedures, or any recognized appraisal methods, or any accepted valuation practices; and that on the contrary, the method he employed to arrive at the assessed valuation of plaintiff's property radically departed from any sound or accepted principles of valuation. It is further alleged that, in making the 1970 assessment he engaged in an intentional systematic and planned deviation from lawful and proper assessing methods, techniques and procedures prescribed by law, without regard to the actual value of the property.

Plaintiff alleges that, notwithstanding the illegality and invalidity of the assessment and the unlawful actions of the taxing officials, it recognizes it is liable for the payment of ad valorem taxes on the real property at the full amount of its just valuation or fair market value on January 1, 1970. In compliance with the statutory requirements, plaintiff paid to the tax collector the full amount of the 1970 taxes admitted to be due and legal. Plaintiff prays for a judicial declaration and adjudication of the illegality of the 1970 assessment of the subject property for failure of the defendant taxing officials to comply with the requirements of law governing tax assessments; and that the court determine the just valuation or fair market value of the real property on January 1, 1970, and cancel and set aside the 1970 assessment in excess of fair market value, and direct the defendants to correct the tax roll to reflect the proper assessed valuation.

The answer of defendants made a general denial of the material allegations of the complaint.

The uncontroverted evidence establishes that the 1970 assessed valuation of plaintiff's building was arrived at by estimating the reproduction cost thereof as of January 1, *1967*, based on a con-

struction cost manual prepared by a former tax assessor. The assessor, having estimated the cost to reproduce the subject building on January 1, *1967*, then applied a multiplier of 25 percent to such estimated building cost, to produce an amount representing the reproduction cost of the existing building on January 1, 1970. The assessor simply took the revised building cost and increased it by 25 percent. With the exception of the upward revision of the building valuation as the base value to which the 25 percent multiplier was applied, the assessment of plaintiff's building was accomplished in the same manner as the building assessments complained of in the case of Miami Board of Realtors v. Tax Assessor (1970), 34 Fla. Supp. 181, wherein this court declared the use of a uniform multiplier or fixed percentage factor is not an acceptable assessment practice under the laws of Florida and should not be employed; and Miami Board of Realtors v. Metropolitan Dade County, Fla. App. 1971, 251 So.2d 340, wherein the appellate court held there was no reason sufficient in law to disturb the ruling of the trial court disapproving the practice of assessing buildings by utilizing a uniform multiplier or fixed percentage factor.

Moreover, the tax assessor arrived at the assessed valuation of the subject building by applying to the estimated reproduction cost a depreciation factor of $1\frac{1}{2}$ percent per annum for the period of time since the initial construction thereof in 1963, thereby attributing to the building a useful life or economic life of approximately 67 years for depreciation purposes. The undisputed testimony of all witnesses (including the appraisal witness produced by defendants) established that the useful or economic life span of the subject building would not exceed 40 years, which produces an applicable depreciation factor of $2\frac{1}{2}$ percent per annum. According to defendants' own expert real estate appraisal witness, depreciation should be based on an economic life span of 40 years, and that the subject building actually suffered 17.5 percent depreciation as of January 1, 1970. The application of proper accrued depreciation to the reproduction cost of a building is a significant factor in the utilization of the cost approach as a method of valuation. Accrued depreciation is the loss in value of the subject property that has occurred in the past as the result of any and all causes, up to the date of valuation, and constitutes an essential element of the cost approach to market value. It is said that the estimate obtained by the cost approach tends to set the upper limit of value, and is generally applied as a check on estimates of value by other approaches. Friedman, *Encyclopedia of Real Estate Appraising* (1968), Chap. 4, pp. 66-67.

With respect to the issue of fair market value, there is competent evidence in the record to support a determination of the question

presented. Plaintiff submitted the testimony and written appraisal report of an expert appraisal witness, whose qualifications are unquestioned. According to this qualified expert witness, on Janunary 1, 1970 the fair market value of the subject building was $12,000,000. In addition, plaintiff produced the testimony of its corporate officers having management responsibilities and personal knowledge of the subject property, which constitutes qualified and competent valuation evidence under the decision in Harbond, Inc. v. Anderson, Fla. App. 1961, 134 So.2d 816, 819. Defendants submitted testimony and the written appraisal report of an expert appraisal witness, whose qualifications likewise are unquestioned. According to defendants' qualified expert witness, on January 1, 1970 the fair market value of the subject building was $18,726,000. The record reflects competent evidence showing the invalidity and error of the contested assessment of $21,689,163 placed on the subject building for the 1970 tax year.

Under the decisions in Merrill v. Simpson, Fla. App. 1969, 220 So.2d 33, affirmed Simpson v. Merrill, Fla. 1970, 234 So.2d 350; R-C-B-S Corporation v. Walter, Fla. App. 1969, 225 So.2d 426, cert. den. Walter v. R.C.B.S. Corporation, Fla. 1969, 229 So.2d 872; and Homer v. Hialeah Race Course, Inc., Fla. App. 1971, 249 So.2d 491, the issue of fair market value of the subject property on January 1, 1970, for ad valorem tax purposes, must be determined upon the basis of the competent evidence before the court. The law does not permit the trial judge to use his independent judgment in fixing assessments. The determination of fair market value must be based on and supported by competent valuation evidence. In the instant case, the competent proof of the factual value issue is conflicting. Accordingly, the determination of the weight to be accorded to each competent valuation opinion rests upon the trier of the facts. City of Coral Gables v. Brasher, Fla. App. 1961, 132 So.2d 442, 444.

Although assessed as a single-building, the evidence establishes that the subject property actually consists of two connected buildings. The larger southerly building is an office type structure. Office facilities are provided for newspaper personnel, and approximately 27,665 square feet of office space is leased to various tenants not connected with the newspaper business. The smaller northerly building is a warehouse type structure utilized as a press building. These buildings are of heavy construction, with high ceilings, thick reinforced floors, and excess electrical facilities. At the time the buildings were constructed, this type of construction was required in order to acommodate the heavy equipment used for publishing a newspaper. Since then, innovations in press machinery and new techniques in newspaper production have eliminated the necessity for heavy construction of newspaper plants.

Under the conditions existing on January 1, 1970 the subject buildings undoubtedly would not be reproduced or reconstructed in the same manner. The buildings would be replaced by less costly structures more closely conforming to the needs of a modern newspaper plant. Replacement of the buildings would be more prudent than the reproduction thereof. Therefore, replacement cost provides a more accurate basis for valuation of the building under the cost approach.

The distinction between reproduction cost and replacement cost is pointed out in the appraisal report of defendants' expert witness. Reproduction cost is the cost of reproducing a new replica property on the basis of current prices with the same or closely similar material. Replacement cost is the cost of reproduction new, on the basis of current prices, of a property having a utility equivalent to the one under appraisement. Defendants' expert appraisal witness stated that — "The indicated reproduction cost basis of estimating fair market value does not necessarily represent value. All that the square foot figures for these buildings indicate is that the Miami Herald building is one of the best buildings in this area. To find out if this figure is meaningful, we should check the replacement cost."

The treatment of reproduction cost, as distinguished from replacement cost, creates the fundamental difference in the conflicting valuations of the subject buildings arrived at by the respective expert appraisal witnesses under the cost approach. The valuation of defendants' witness is predicated upon an estimated cost to reproduce exactly the same buildings at current prices. The valuation of plaintiff's witness is predicated on replacement cost, the cost at current prices to replace with buildings having a utility equivalent to the existing structures, which would conform to the needs of a modern newspaper plant and offices.

The fundamental question the parties present to the court for determination is the just valuation or fair market value of the buildings on January 1, 1970. It is well settled that fair market value is determined by ascertaining the amount a purchaser willing but not obligated to buy, would pay to one willing but not obligated to sell, for the property involved. Market value is found in the market, and the market is made by sellers and purchasers.

However, newspaper plants as such are not often bought and sold. There are instances of newspaper plants bought and sold for other uses, but not for continued use as newspaper plants. As stated by defendants' expert witness — "Metropolitan Dade County and the southeast portion of the state of Florida can support only one major newspaper publishing plant." The undisputed factual circumstances suggest the absence of a market for the sale

and purchase of the subject buildings for use as a newspaper publishing plant in this area.

In the absence of a local market for buildings used as newspaper publishing plants and as a means for ascertaining value in a typical market, plaintiff's expert appraisal witness studied and analyzed from the position of a willing purchaser the process that such a purchaser would employ in his consideration to purchase the subject buildings. The subject buildings would not be purchased for use as a newspaper plant, but consideration would be given to purchasing them for use as an office building. The structures produced under the replacement concept, as distinguished from the reproduction concept, would readily lend themselves to conversion to office building usage. The existing buildings are utilized to some extent for offices, and could be feasibly converted to usage as office building facilities. The highest and best use to which the subject property could be expected to be put if bought and sold in the market would be office building facilities. Plaintiff's appraisal witness supported his estimate of fair market value by employing the cost approach, the market or sales comparison approach, and the income or economic approach. The validity of this method of valuation was recognized by defendants' appraisal witness, who stated that — "Since there is no local market for rentals of newspaper buildings an alternate use, for example, an office building use, could be examined." However, defendants' witness relied upon the cost approach, based on reproduction cost, to arrive at his estimate of fair market value. Consideration of the income approach under the office building concept was rejected as being unrealistic. In the absence of a market for buildings devoted to use as a newspaper plant, defendants' witness also rejected the market or sales comparison approach to value.

Although defendants conceded at the trial the qualifications and competency of plaintiff's expert appraisal witness, defendants now contend that his testimony and appraisal report should be rejected and disregarded as being unrealistic, illogical and contrary to law. Defendants take the position that the subject buildings must be valued in their existing condition as a newspaper plant, without regard to the utility or usage thereof in the market as office building facilities. The testimony of the plaintiff's witness has been considered and tested by the court, as the trier of the facts, for its weight as competent proof of value. See Rochelle v. State Road Department, Fla. App. 1967, 196 So.2d 477, 479.

Upon careful consideration of the conflicting valuation evidence ably presented by both parties, the court finds for plaintiff on the issue of the just valuation or fair market value of the subject buildings on January 1, 1970.

The court so finding, and being duly advised in the premises, it is thereupon ordered and adjudged as follows —

(1) The just valuation and lawful assessed valuation of the subject buildings for ad valorem tax purposes as of January 1, 1970 is the sum of $12,000,000.

(2) The 1970 assessment of said buildings in the sum of $21,689,163 is invalid and to the extent that the 1970 assessment exceeds the just valuation and lawful assessed valuation of $12,000,000 it is set aside and cancelled.

(3) The land assessment in the sum of $1,221,320 is not contested, and is declared to be valid. The aggregate just valuation and lawful assessed valuation of the subject land and buildings, identified on the 1970 tax roll by folio number 2-01-3231-18-010-7, is as follows —

| | |
|---|---|
| Building assessment | $12,000,000 |
| Land assessment | 1,221,320 |
| | |
| Total assessment | $13,221,320 |

(4) The defendants shall cause the 1970 taxes on the subject buildings to be recomputed and fixed on the basis of the assessed valuation of $12,000,000, and shall furnish plaintiff with a corrected tax notice evidencing the lawful assessed valuation of the subject property, and the 1970 tax records shall be amended and corrected accordingly.

(5) Each of the parties shall bear its own costs incurred in connection with this litigation.

(6) The court retains jurisdiction of this cause for the purpose of enforcing compliance with the provisions and requirements of this final judgment.